## Bowman vs. Wickliffe.

APPEAL FROM NELSON CIRCUIT.

**Case 14.**

1. A dedication of land to be used as a private passway cannot be inferred from the fact that the proprietor, for a great number of years, permitted his land to be so used, and subsequently conveyed it, covering the passway.
2. The custom, so usual in Kentucky, of travelling over uninclosed land without asking permission of the owners, tends to repel any inference of a dedication from the mere fact of uninclosed land being so used.
3. To create a presumption of right to the use of a passway by long use, it should appear that it had been long so used, under a claim of right, and not by mere permission.
4. The fact that the owner of the soil, himself, frequently changed the position of the road or passway and no complaint made of such change, is presumptive evidence that no right was claimed by others.
5. The right of way by one person over the land of another must be for twenty years at least before any presumption of a grant of the right can arise merely from the use, and then the use must have been enjoyed under such circumstances as indicate that it had been claimed as a right, and not enjoyed as a mere privilege.

**Case stated.**

Charles A. Wickliffe being the owner of two hundred acres of land, being part of a survey of 2,400 acres patented to William Coons, in Nelson county, Kentucky, and lying near to Bardstown; and also the owner of fifty acres, part of the same tract, in a distant part of the survey from the 200 acres, filed his petition in the Nelson Circuit Court to cause to be opened a passway from the 200 acres to the fifty acres, alleging a right from long use, and relying on a dedication by the original owner, Coons, of ground for such passway. It is averred that William Coons settled upon the land more than fifty years before

the filing of the petition; that he had twelve children; that to each of them he allotted and conveyed separate parts of said land, and conveyed it, reserving about 200 acres for his own use, which was conveyed to other individuals.

The public road from Bardstown to Bloomfield passes through the 2,400 acre tract of land, and the occupants residing on that part of it most distant from Bardstown, had been in the habit of using a road that led through a part of the land into the public road. The road so used, however, was not a public road, nor had it ever been so considered or treated. It was a private passway, known and regarded and used as such. The land over which it passed was uninclosed woodland, until about fifteen years past, when, for the first time, the land adjoining the passway, along a portion of the road, was inclosed, leaving the passway open; other portions of the land have since been inclosed, and a road left open of sufficient width for neighborhood use. This road has not, at least until the adjoining land was inclosed, had any fixed and certain locality. Its position has been changed at the discretion of the proprietors of the land through which it passed. A private passway, running in the same general direction, has however existed at least for forty or fifty years.

It appears that several other roads of the same description passed through this tract of land, were used for several years, and then discontinued, by the owners of the land over which they passed fencing up and inclosing the land, and thus terminating their existence as passways.

Wilson Bowman, the appellant, having purchased nearly the whole of the land over which the private road, first mentioned, passed, and that adjoining it on both sides, in 1851 ran his fence across it, so as to prevent all further use of it as a passway. To have this passway again opened was the object of this petition.

The petitioner insists upon his right to have this passway opened, on the alleged ground of the alleged dedication of the land over which it passed by the fee simple owners thereof to the use of all those who occupied land inside of Coons' patent, and any other persons who might think proper to use it. He relies upon the long uninterrupted use and enjoyment of it by the occupants of the land, and others, as fully sufficient to establish his claim. He prays that he may be quieted in the use and enjoyment of it, and that Bowman might be enjoined from inclosing it, or otherwise disturbing his right to its use.

Bowman, the appellant, in his answer, denies any dedication of the land of the nature and for the purpose mentioned by Wickliffe, alleging that the passway had been used by the mere permission of the owners of the land, who had the right at any time to inclose it, and thus prevent its use as a passway.

The Circuit Court rendered a judgment establishing the right of the plaintiff to the use of the road, and enjoining the defendant from inclosing it, or in any manner interfering with the plaintiff's right to its use. From which judgment the defendant has appealed to this court.

*Grigsby & Newman*, for appellant—

It is denied that there was at any time a dedication of the right of way to the public or to individuals, either by the patentee or any subsequent holder of the land. The passway referred to by the appellee existed merely by the permission of the owners of the land, as a mere curtesy or kindness among neighbors.

The appellee does not attempt to show that his vendor had a right of way by implication, as a purchaser from the formal owner; his claim is predicated solely upon an alleged dedication by the owners of the land through which the road passed. There is no proof of any formal grant or dedication of the right of way claimed. The appellant bases his right

upon prescription, or the presumption of grant or dedication from lapse of time. To establish a right by prescription, three things are necessary. 1. The use, occupation, or enjoyment of the thing. ·2. The identity of the thing enjoyed. 3. It must have been adversely enjoyed. (*See U. S. Digest, Title Prescription; Lawton vs. Rivers, McChord*, 445, *cited*.)

It is not denied in this case that a road running in the same general direction of the one now claimed, has been in existence thirty or thirty-five years, first used as a mere bridle-way, but for fifteen or twenty years past as a wagon-way; but so far from the proof showing that the identical road now claimed has all that time been used, the proof shows that it has never been confined to any particular ground. It has varied to the right and to the left of its present location as much as one hundred yards. Fifteen years ago it ran one hundred yards to the east of its present location, through the woodland of Walter Coons, who, about that time, inclosed part of his woodland, and threw a part of the road where it now is. Walter left part of his woodland uninclosed, through which the road ran in various directions, at different times, until about five years past. Bowman bought out Thomas Coons, and extended his fencing and threw another part of the road where it now is, the road still passing through a part of the Thomas Coons survey, owned by Doctor Cox, until 1849, when Bowman bought out Doctor Cox, and about 1851 fenced in a part of the last purchase; and still there is a part of this passway through woodland, having no fixed location.

The identity of a road consists in its location; and surely there has been in times past no such identity of this road as to sustain a right by prescription.

But in regard to the other essentials to sustain a title by prescription, that is, an adverse use or enjoyment, appellee has wholly failed in his proof. It is said in *Medford vs. Pratt*, 4 *Pick*. 222; *Gloucester vs. Beech*, 2 *Ib*. 60, *note; Kirk vs. Smiith*, 9 *Wheat*. 241, in sub-

stance, that an adverse right to an easement cannot grow out of a mere permissive enjoyment. And again: "The use or possession on which a prescription is founded must be uninterrupted, and of a nature to indicate that it is claimed as a right and not the effect of indulgence, or any compact short of a grant. (*Garetly vs. Bethune,* 14 *Mass. Rep.* 49–53; *Odiorne vs. Wade,* 4 *Pick.* 421; *Sumner vs. Yelston,* 7 *Ib.* 198; *Church vs. Burghart,* 8 *Ib.* 327; *Melville vs. Wheeling,* 10 *Ib.* 295; *Baker vs. Boston,* 12 *Ib.* 184; *See U. S. Digest,* 1847, *title, Ways; and Supplement,* 2 *vol.* 942.) Tested by this essential rule, the claim of appellee wholly fails.

The use of this way was never before claimed as a right by any one. It was always regarded as a mere curtesy shown to the neighborhood by the owners of the land. It appears from the proof in this cause that there was not less than five passways over this 2,400 acre tract, each of which based upon the same right as this, and every one of these roads were regarded as existing through mere indulgence of the owners of the land, and have been closed as the owners of the land found it necessary to do so to enjoy their lands respectively—the appellee as well as others; and no right has ever been asserted in opposition to that course.

A dedication or grant is essential to sustain the right asserted by appellee. A prescription creates a presumption of a grant after great lapse of time; but in this case there never has been any assertion of right at any time, either derived through a dedication or otherwise. This road never was recognized by the County Court as one of the public roads. And in these respects the case differs essentially from the case of *Elliott vs. Treadway,* 10 *B. Monroe,* 26, and *Kaye vs. Hall,* 13 *B. Monroe,* 58. In the case of *Elliott vs. Treadway* the principle contended for by us in this case is expressly recognized.

The court is referred to cases cited in the *Supplement to the 2d vol. U. S. Digest for* 1847–8–9, *title,*

*Ways;* 29 *Maine Rep.* (16 *Ship.*) 499; 19 *Conn.* 39, 128, 154; 1 *Rich.* 58; 2 *Ib.* 136; 3 *Ib.* 85.

BOWMAN
*vs.*
WICKLIFFE.

If Wickliffe's claim is a right, which is implied to have access to his land, the appellant has the right to designate that route, and to vary it from time to time so as that it be a reasonable way.

In this case the judgment is farther erroneous in not designating any specific and certain way which appellee is to have the right to use. A reversal is prayed for.

*Hite & Muir,* on the same side—

It is not alleged that William Coons, the patentee of the 2,400 acres of land, or any one of his children, ever made any grant of the way now insisted upon by the appellee; and the appellee relies solely upon long use as evidence of dedication by William Coons, the original proprietor.

The proof shows that there has been many roads or passways through this tract of land, but without any permanent location, but all have been discontinued but one, as it became the interest of the owners of the lands to inclose them. The way now claimed has had no fixed location; it has been changed at the pleasure of the owners.

In England, where roads have been used for a great many years over inclosed grounds, without interruption from the owner of the fee, courts presume a dedication to public use. But in this country, where owners of land have not inclosed them, but permitted the public to pass over them at pleasure, no presumption of a dedication can arise. Permission to pass over lands so situated may prove an intention that the public shall so use it as long as the owner may think proper, but revocable at his pleasure—(*See Gratton's Virginia Reports,* 632)—but does not prove a dedication.

There must not only be a dedication, but there must be an acceptance of the right to the use to debar the owner from resuming it at pleasure. (*Common-*

*wealth vs. Kelly,* 8 *Gratton, Va. Rep.*) "What constitutes an acceptance? Is it the mere passing over the road by individuals? If so, what number must pass to amount to an acceptance? Obviously, if the acceptance is to depend upon the number of persons passing, it will often be matter of great uncertainty whether the road is public or not; which may give rise to much troublesome litigation. The right of acceptance ought to be vested in some public body." This state vests that right in the County Court. There must be something farther than a mere permission to use to constitute a dedication. (10 *B. Monroe,* 27.)

This road has never been worked as a public road by the County Court's orders. It has never had any defined locality. It has been changed at the pleasure of the owners of the land, and no one has asserted any right to oppose such changes. It is believed the Circuit Court erred in its judgment, and that a reversal should be the consequence.

*Morehead & Brown,* for appellee—

The appellee relies upon the fact that William Coons, being the proprietor of 2,400 acres of land in one body, and the additional fact, proved in the record, that he divided this land, except 200 acres which he retained for his own use ; that he intended to give to his children free access to the lands which he gave them respectively, through the lands of his other children ; and that this inference is sustained by the additional fact that roads or passways through the lands have existed at all times since the respective parts were conveyed to the children of said Coons, and the use thereof not disputed.

It is farther insisted that this road has been used and regarded as a common passway and easement by W. Coons and his children, and those claiming under them, for more than thirty years, and the right to use it never questioned; that the appellee has been the owner of 200 acres of the original survey for

more than thirty years, and in the uninterrupted enjoyment of the use of the way for that entire period without molestation; and that seventeen or eighteen years ago the appellee became the owner, by purchase of Thomas Coons' heirs, a son of the original proprietor, which he had owned and lived upon during his lifetime, and of which he took possession and cultivated, though separated from the 200 acres before held by intervening of the appellant's land; and that as the owner of that last purchase and the 200 acres the right to pass from one to the other of these lots, all derived from the same common property, exists as a right; and having been so long exercised, a presumption of grant is to be presumed.

The principles upon which rights of way or easement depend, are well settled in England and America. The facts admitted by the defendant, and proved by the plaintiff, are—1. That the plaintiff, and those under whom he claims not only the lot on which his house is situated, but the lot of 105 acres on which Thomas Coons resided, as well as the owners and proprietors under William Coons the patentee, have used and enjoyed this road, claiming the right to do so, for forty years. 2. That defendant himself, and those who sold to him, claimed and used it as an easement for at least thirty years, and up to the time when he attempted to obstruct the plaintiff in the free use of it.

The plaintiff has owned the 57 acres bought of Thomas Coons' heirs for sixteen or seventeen years; the 200 acres has been used and occupied under a deed from William Coons to his daughter for fifty years. The lot of 105 acres, 57 of which is now owned by Wickliffe, and the lot to which the passway leads, has been owned and occupied by Thomas Coons and Wickliffe for at least forty years. The charge in the petition is that the owners in fee of the land more than fifty years ago dedicated this road to the use of all who owned the lots laid off by William

Coons, and that the same has by consent and agreement of all been accepted and used for forty years. The defendant does not deny the dedication as charged, (*i. e.*) for the individual use of the owners and occupants of the land sold and owned by William Coons. His denial is in these words: "Respondent denies that the same was ever dedicated to public use, or that it ever was considered as appropriated to the public for a road or any other purpose."

It is in proof that defendant at one time recognized the propriety of keeping this passway open. The proof is full to prove the acceptance of this passway, and its use for thirty years by the persons and their vendees and their heirs for whose use it was originally dedicated. It was a common benefit; no one of the vendees of William Coons had the exclusive right to use it, nor the right to deprive another of the use of this common passway. The manner in which William Coons divided his land amongst his children gave rise to such a dedication. By it each child had access to his land from the public road; and so long as the Coons' owned the lots they regarded it as the right of each derived from their common grantor and father; for fifty years was it so regarded; and not until defendant possessed himself of all the lots along this passway, save the plaintiff's, was the right and possession of plaintiff or his grantors questioned. It is fairly to be presumed that a desire to force plaintiff to sell his land has induced defendant's acts of hindrance to the enjoyment of his rights, and gave rise to this suit.

The plaintiff claims the right to use this passway upon the ground that it was dedicated for individual benefit, which constituted at the time an incorporeal hereditament, and passed with the fee to the use and benefit of the owners and possessors in fee of the lands or lots for whose use it was granted by the original proprietor. Such a grant will be presumed after a use of 20 years, even when the necessity of it is not apparent. If A sells a tract of land sur-

rounded by other lands, a right of egress and regress through the grantor's other lands passes by the sale and conveyance. The sale and conveyance by Wm. Coons, to his son Thomas, of the 105 acres, gave to his son and his vendees a right of egress and regress to the same. In this case, as the way was simultaneous with the grant to all, after this lapse of time, and the continued use by all for thirty years or more, the law presumes a grant. The rule of law upon this subject is clearly stated by Chancellor Kent (3 *Kent's Com.* 244,) in these words: "The cases usually say that this right, acquired by twenty years' undisturbed and uninterrupted enjoyment of an easement, is founded on the presumption of a grant or release, and if so, it is not an absolute title; but one that is liable to be rebutted by circumstances, and it is to stand good until the presumption of title is fully and fairly destroyed. This was the doctrine so late as the case of *Campbell & Wilson,* 3 *East,* 294, and *Lusk vs. Wilson,* 3 *Burg. R.* 115; and it is the prevalent language in all the books—English and American.

But some of the English authorities seem to give the presumption the most unshaken stability, and say it is conclusive evidence of title. Kent says (in 4 *Mason, C. C. R.,* 397, *Tyler vs. Wilkerson:*) The whole law on the subject is stated with learning, precision and force; the presumption is even made to be one *juris et de jure,* and go to the extinguishment of the right in various ways, as well as by grant.

" The presumption founded on the fact of uninterrupted enjoyment of an easement for twenty years is said to exist, notwithstanding personal disabilities of particular proprietors might have intervened, and when in the ordinary course of proceedings grants would not be presumed." (*Kent's Com.* 446.)

An uninterrupted enjoyment of a way, or any other incorporeal hereditament, for twenty years, when the origin of it does not appear, affords a pre-

BOWMAN
*vs.*
WICKLIFFE.

sumption of a grant to the party enjoying it. And the extent of the right must be measured by the manner in which it has been actually enjoyed. (2 *Bacon's Ab. title Evidence*, 661; 2 *Bos. & Pul.* 400.)

After thirty years possession a grant will be presumed. (2. *J. J. Marshall*, 327.)

In the case of *Tate & Pruitt*, 7 *Monroe*, 337, this court decided that 20 years uninterrupted use of the water from the spring on the land of the defendant by the plaintiff, conduces to prove title in the plaintiff to the use of the water. It was held by this court (4 *Monroe*, 479, *Commonwealth vs. Abney*,) that where a road has been used by the public and worked by the public for a long time, it will be presumed that it was established by the court. Will not the same principle, where a way has been used by an individual without complaint or interruption, over another man's land, and that reduced to an open lane, justify the presumption of a grant of right of way? We consider a grant of right of way good without writing. In 10 *B. Monroe*, 27, *Elliot vs. Treadway*, this court recognize the principle contended for in this case. There was no establishment of the road in that case. It had been treated as a public road by the public and the defendant. It had been worked as such and used for 16 years—it was held to be a public highway. In this case, Bowman and others interested in the real estate covered by Coons' grant, had treated this as a common road or passway, and used it as such, and plaintiff, after his purchase of the Brashear lot and the 57 acres, used and claimed the right to·do the same, for more than twenty years—ten years before he bought the 57 acres, and seventeen years since that purchase. It is respectfully contended that his possession, though not exclusive, yet as to all purposes for remedy against wrong-doers, it was personal and adverse.

The plaintiff does not place his claim upon the permission to use this road; he claims upon a right presumed to have been granted by those who had a

right to grant; coupled with an uninterrnpted enjoyment of that right by himself and his vendors for more than thirty years—a right, the precise time of the origin of which cannot be proved, but existing longer than thirty years ; some witnesses say forty.

The occasional deviations of the route of this passway, rendered so by the necessity of the case, from mudholes, and trees falling in it, or by gradual extension of the fencing until brought to its present location, demarked by an open lane, cannot oust the plaintiff of his legal right, or destroy the presumption of grant, which the long use of the road creates.

The case relied on by appellant, quoted as Virginia decision, *Gratton's Rep.*, has been noticed in some law journal. This was the case of the commonwealth against a citizen for obstructing a public road. It appeared that the road was not established, nor had it ever been treated by the public as a public highway, by working upon it as such; but only that it had been used by any and every person who chose to travel on it. The court said there must not only be a dedication by the proprietor of the soil to the public for a road, but there must be an acceptance by the public authority, and the County Court was the only power to which the dedication could be made, and that could accept it; that such acceptance must appear by some public official act, treating the road by the public authorities as a public road; that the use of it by individuals, however long, was not an acceptance of a dedication as a public road. Bowman could not be punished by indictment for obstructing this road; because it never has been dedicated to the public, and accepted by the County Court; but this does not prove that for interfering with the right of private use, by the plaintiff, of this road, he is not liable for injuries done, and to be restrained from a repetition of them. Wherefore, an affirmance is asked.

On the 5th of July, 1854, Judge SIMPSON delivered the opinion of the Court, which was suspended by a petition for a re-hearing, until the 18th December, 1854, when the petition was overruled—

William Coons was the patentee of twenty-four hundred acres of land, in one body, situated in the county of Nelson. He settled upon this land more than fifty years ago. He had ten or twelve children, to each of whom he allotted and conveyed separate and distinct parcels of said land, by metes and bounds. The residue thereof, except about two hundred acres, which he reserved for his own use, he conveyed to other individuals.

The public road from Bardstown to Bloomfield passes diagonally across this twenty-four hundred acres of land, and the occupants who resided on that part of it which was most distant from Bardstown, had been in the habit, for forty or fifty years, of using a road that led through a part of the land into this public road. The road which had been so used was not, however, a public road, nor had it ever been so considered or treated. It was a private passway, known, regarded, and used as such. The land through which it had passed was uninclosed woodland, until about fifteen years last past, when, for the first time, the land adjoining the passway, along a portion of its site, was inclosed, leaving the passway open. Other portions of the land have, since that time, been inclosed, and a road left open of sufficient width for neighborhood use. This road has not, at least until the adjoining land was inclosed, had any fixed and certain locality. Its position has been changed, from time to time, according to the pleasure and discretion of the proprietors of the land through which it passed. A private passway, running in the same general direction, has, however, existed for at least fifty years.

It appears that four or five other roads of the same description passed through this same tract of land, and were traveled on and used for many years, but

were all eventually discontinued by the owners of the land over which they passed, who fenced up and inclosed the land, and thus terminated the existence of these passways.

Wilson Bowman having, by purchase, become the owner of nearly all the land over which the private road first mentioned passed, and also that which adjoined it on both sides, run his fences in the year 1851, in and across it, so as to prevent all further use of it as a passway.

C. A. Wickliffe is the owner of two hundred acres, part of Coons' patent boundary, which two hundred acre tract is that part of the land which is nearest to the town of Bardstown. He also owns about fifty-seven acres in the boundary of the twenty-four hundred acres, near the other and more distant end of the tract. The passway inclosed by Bowman had been used by Wickliffe for some fifteen years, in passing to and from his two hundred acre tract to this fifty-seven acre tract; and it had been previously used for many years by the former occupants of the last mentioned tract of land, before it was purchased by Wickliffe.

A petition in equity was filed in this case by Wickliffe vs. Bowman, in which he set up and relied upon a right to the use of this passway. He claimed it under an alleged dedication of the land over which it passed by the fee simple owners thereof to the use of all those who occupied land inside of Coons' patent boundary, and any other persons who might think proper to use it. He relied upon the long, uninterrupted use and enjoyment of it by the occupants of the land and others, as fully sufficient to establish his claim. He prayed that he might be quieted in the use and enjoyment of it, and that the defendant, Bowman, might be enjoined from inclosing it, or otherwise disturbing his right to its use.

The defendant, Bowman, in his answer, denied that any dedication of the land, of the nature, or for the purpose mentioned by the plaintiff in his petition,

VOL. XV—7

BOWMAN
*vs.*
WICKLIFFE.

had ever been made. He alleged that the passway had been used by the mere permission of the owners of the land, who had a right, as he contended, at any time, to inclose it, and thus to prevent its being used as a passway.

The court below rendered a judgment establishing the right of the plaintiff to the use of this road, and enjoining the defendant from inclosing it, or in any manner interfering with the plaintiff's right to its use. From that judgment the defendant has appealed to this court.

No express act of dedication is relied upon in the pleadings, or established by the testimony. If Coons, the patentee, had merely conveyed the land on each side of the passway, a dedication of its use by him to his grantees might have been implied from the mode in which the conveyances had been made; but he did not do that. He conveyed the whole of the land through which the road passed, not reserving any part of it for a passway. Nor does it appear that he reserved, in the conveyances which he executed, a right of way either in favor of himself or any of his grantees over the land thus conveyed. Nor was there any act done by his grantees which amounted to a dedication, or from which an intention to make a dedication can be implied.

Unless, then, a dedication or grant of the right of way can be implied from the use and enjoyment of the road for forty or fifty years without interruption, there is nothing in this case tending in any degree to show that any dedication or grant was ever made.

It has been usual and customary in this State to travel over uninclosed woodland without asking the permission of the owner; and considering the extent and universality of this custom, it tends strongly, if not conclusively, to repel any presumption that might otherwise arise, in such a case, from long continued use of the grant of the right of way by the proprietor of the land. The mere use of this road, then, during the period of time that the land through which it

1. A dedication of land to be used as a private passway cannot be inferred from the fact that the proprietor, for a great number of years, permitted his land to be so used, and subsequently conveyed it, covering the passway.

2. The custom, so usual in Kentucky, of travelling over uninclosed land without asking permission of the owners, tends to repel any inference of a dedication from the mere

passed was uninclosed woodland, cannot be regarded as proving anything detrimental to the rights of the proprietors of the land. Roads also are frequently made and left open by the owners of land for their own convenience, and the mere fact that other persons are permitted to use and enjoy such roads, does not, of itself, tend to create a presumption of a grant of the right of way by the proprietor of the soil, to them or to the public.

The use of a passway, to create a presumption of a grant, must have been claimed and enjoyed as a right, and not merely as a privilege, which the proprietor of the land might have withdrawn at his pleasure.

Here, the persons who used the passway, as well as those over whose land it passed, regarded its enjoyment as depending exclusively upon the permission of the owners of the land. Their right to inclose it, and deprive those who used it of its enjoyment, does not seem to have been questioned. All, or nearly all, of the witnesses testify, that they always supposed the owners of the land had a right to stop up the passway or not, at their option. It does not appear that the right to have it kept open, was ever claimed by any person, unless it was by the defendant himself, on a single occasion, before he owned the land on both sides of the passway, and then the claim does not seem to have been acknowledged or respected by the other owners of the land over which the road passed.

The fluctuating character of the position of this road demonstrates that its use was merely permissive, and was not claimed as a right by those who enjoyed it. Besides, a fixed and determinate locality is necessary, under any circumstances, to justify a presumption of a grant; for unless the use and enjoyment of the same identical road, on or so near the same ground as to render the change of locality, if one be made, really imperceptible, be continued uninterruptedly, for a sufficient length of time to create such a pre-

---

*Margin notes:*

Bowman
*vs.*
Wickliffe.

fact of uninclosed land being so used.

3. To create a presumption of right to the use of a passway by long use, it should appear that it had been long so used, under a claim of right, and not by mere permission.

4. The fact that the owner of the soil, himself, frequently changed the position of the road or passway and no complaint made of such change is presumptive evidence that no right was claimed by others.

BOWMAN .
*vs.*
WICKLIFFE.

5. The right
of way by one
person over the
land of another
must be for 20
years at least
before any pre-
sumption of a
grant of the
right can arise
merely from the
use, and then
the use must
have been en-
joyed under
such ' circum-
stances as indi-
cate that it had
been claimed as
a right, and not
enjoyed as a
mere privilege.

sumption, none can legally arise. The fact that the site of a road is determined and regulated, as was the case in the present instance, by the owners of the land over which it passes, evinces clearly that the use of it is not claimed as a right by those who travel on it.

The use of a right of way by one person over the lands of another, must be continued at least twenty years before any presumption of a grant of the right can arise merely from the use. And then the use must have been enjoyed under such circumstances as would indicate that it had been claimed as a right and had not been regarded by the parties merely as a privilege revocable at the pleasure of the owner of the soil. Here the road was not used more than fifteen or sixteen years, and part of it only some three or four years after the land was inclosed, before it was discontinued by the defendant. Its previous use, whilst it passed through woodland not inclosed, we do not think is entitled to any weight under the circumstances in this case. Besides, it is perfectly evident that the use of this passway was at no time, or, at least, not until within a few years past, claimed as a right, but was regarded by all parties as a mere privilege allowed by the owners of the land, which they had a right to withdraw at pleasure.

It has been contended in argument, on behalf of the claim asserted by Wickliffe, that the sale and conveyance of this fifty-seven acres of land by the patentee to one of his sons, gave, by implication of law, to him and his vendees, the right of ingress and egress to the land thus conveyed. This ground was not assumed by the plaintiff in his petition, nor has he established such facts as are essential to sustain a claim based upon it. It does not appear that the patentee at the time he conveyed this fifty-seven acres, owned any of the land over which the road in question passed. He may have previously conveyed it all to other persons. Unless the land belonged to him at that time, no right to pass through it could

Bowman
*vs.*
Wickliffe.

arise in favor of his grantee. Neither the date of that, or of any other conveyance made by the patentee, was shown, nor were any of the matters upon which such a right essentially depends alleged by the plaintiff, or put in issue by the parties, or established by the testimony.

It might be argued that the plaintiff must have a a passway to this fifty-seven acres of land as a matter of necessity, and therefore he is entitled to the use and enjoyment of the road in question. But the testimony shows that he can approach to within a short distance of this piece of land by a public road, and that the defendant, being the owner of the land that lies between the plaintiff's land and the public road, had, before he shut up the road in contest, made a lane from the public road to the plaintiff's land, for his special use. It is true that this road is more distant than the other. But the plaintiff, to get to his land by the road he claims, will have to pass nearly three-quarters of a mile through the lands of the defendant; and if the latter be compelled, as he is required to do by the judgment of the court below, to keep this road open for the plaintiff's use, he will have to make much additional fencing that would be unnecessary, if the road was not required to be kept open. The inconvenience that the plaintiff will be subjected to by having to use the public road, is much less than that which would be imposed upon the defendant by his being compelled to keep a road open through his land for the use of the plaintiff, who, from the testimony, seems to be nearly the only person who has any use for it, or to whom it will be of any special advantage. The plaintiff is entitled to a passway from his fifty-seven acres of land to the public road, which runs at no great distance from it; and has, by statute, a remedy to obtain it. Having been furnished with such a passway by the defendant, he had no right to any relief in a court of equity.

Wherefore, the judgment is reversed, and cause remanded with directions to enter a judgment dismissing the plaintiff's petition.