## Davidson v. Nantz.

(Decided October 9, 1917.)

### Appeal from Jackson Circuit Court.

1. Highways—Passways—Right to by Prescription.—The grant of a right of passway by prescription will be presumed from an uninterrupted, unexplained and adverse use of such a nature as to indicate a claim of right for fifteen years or more.

2. Highways — Passways — Difference Between Prescriptive Right Through Unenclosed Woods and Enclosed, Cultivated Land.—There is a marked difference between the right of the public claiming a passway when the travel has been for many years through open, uncultivated woodland and where it has been through enclosed, cultivated land; and it requires much stronger evidence to establish a right by prescription to a passway through open, uncultivated

woods than it does to establish such right through enclosed, cultivated land.

W. E. BEGLEY and J. J. DAVIS for appellant.

C. P. MOORE, L. C. LITTLE and H. J. JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This is a passway suit brought by the appellant, Davidson, in the court below against the appellee, Nantz, seeking by a mandatory injunction to compel Nantz to remove obstructions placed by him in the passway in controversy. The lower court dismissed the petition, and Davidson appeals.

The passway in dispute is about three-fourths of a mile long and runs from the Annville and Grayhawk public road on the west to the Mildred public road on the east, and the greater part of the way through land now owned by Nantz. The residence of Davidson is situated on the west end of this passway and about two hundred yards from the Annville and Grayhawk public road, to which he has unlimited and undisturbed access. It also appears that the Annville and Grayhawk road and the Mildred road intersect each other a short distance north of the passway in dispute and also at a point south of this passway. So that Davidson by going from his residence to the Annville and Grayhawk public road could, if he desired to reach any point on the Mildred road, get there by going either north or south on the Annville and Grayhawk road to the point at which the Mildred road and the Annville and Grayhawk road intersect each other, and thence on the Mildred road to the desired place. But if he desired to go to a point on the Mildred road near the place where it is intersected by the passway in dispute, it would be nearer and more convenient for him to use the passway.

Davidson has lived where he now resides since 1893 and claims that he and others have been using this passway without interruption since that time. And, further, that it had been used for many years before that by other people in the neighborhood; that it was so used without objection or obstruction until Nantz, just before this suit was brought, put some trees and a fence across it. He said: "When I first became acquainted with it, it was just a path. People traveled it by horseback and on foot. It is now about in the same place it was then, except for several changes made to avoid mudholes."

He said that these changes were made at different places and at different times by the persons who traveled the road; that the road ran a part of the way on the end next to his residence between the lands of himself and Nantz. and the remainder of the way through the land of Nantz; that two or three gates had been put across the pathway by Nantz or his vendor some years before it was obstructed, but it does not appear that any objection was made to the erection of these gates; that he had frequently used the passway ever since he had lived in that neighborhood, both in wagons and on horseback, in going to and from his house and church and the mill on the Mildred road; that he had never asked any permission to use it, nor did any person ever object to his using it; that other persons had also used it to some extent, but it does not appear from the maps that there are any residences on this passway between the two public roads mentioned except the residence of Nantz at the east end and the residence of Davidson at the west. That on one occasion Nantz told him he was going to close the passway and asked him to remove some shavings from the nearby premises before he closed it; that he asked Nantz to let him come out over a new road in the woodland if he was going to close the old passway, and that Nantz told him he could do so, and that he, Davidson, did not object to Nantz's closing the passway; that the passway ran through the land of Nantz about fifteen hundred yards, and that if Nantz was to cultivate the land through which the passway ran it would be necessary to fence it all or to put gates across it, and that he, Davidson, had no objection to gates being put up.

David Simpson, Levi Pennington, G. W. Moore and others testified that for probably fifty years people had passed along the route of this passway on horseback mostly, sometimes on foot, using it without let or hindrance; that with the exception of a little cleared land at each end, it was wild, unenclosed woodland, and nobody objected to people driving or walking or riding through it where they pleased.

W. K. Jones, who sold to Nantz, a few years before suit was brought, the land over which the passway runs, and who had lived within about a mile of it for many years, testifying for Nantz, said, in substance, that before he bought the land, in 1902, over which the passway ran, there had been some travel over it, mostly on horseback and by people hauling wood and timber out

from the land; that when he bought the land he widened and cleaned up the passway for the purpose of getting his timber out; that before that persons going through there would use first one place and then another, and that whenever the passway at any place would become obstructed the travelers would change it to a new place; that when he purchased the land and commenced to use the passway for the purpose of getting his timber out, the old way was frequently obstructed; that he never heard of any person going through there as a matter of right; that anybody used it who wanted to without objection from any person; that before he bought it, the lands over which the passway ran were owned by non-residents of the county, who gave no attention to the travel through the woodland; that the passway ran through a little cleared land near the point where it intersected the Mildred road; that about 1910 he enclosed the land with fences; that after he commenced hauling timber out, about 1906 or 1907, he repaired the passway, and after that other people used it; that he made no objection to their use of it, but never consented that anybody might use it, and that he put gates across it without objection from any person; that all times he considered he had the right to close it at any time he wanted to; that it would damage Nantz about $600 if this passway were opened to the public; that it was principally used in the winter time by persons in wagons for the purpose of avoiding bad places in the two public roads mentioned.

Other witnesses gave, in effect, the same evidence as Jones. The substance of all the evidence is that until less than ten years before this suit was brought this passway ran through wild, unenclosed uncultivated woodland, except that there was a little cleared land on the passway where it intersected the two public roads. The location of it was moved from time to time from one place to another to avoid obstructions or bad places, and in the beginning of its existence there was for many years merely a bridle path through the woods, which was used occasionally by vehicles. But the horseback traffic was not heavy, and the vehicle traffic was very light; that in the last ten years, and after Jones had widened this path for the purpose of getting his timber out, and to some extent made it more fit for travel, the travel increased, but not then to a great extent. Anybody went along this passway that wanted to. No person asked per-

mission and no person objected. When it became obstructed by falling timber or for other causes was rendered unfit for travel, the route was changed by persons who had occasion to go this way. Gates were put across it by Jones as well as Nantz without objection, and, indeed, it does not appear that the public has any special interest in .it. Nor is it needed by Davidson to go to his depot, church, school, mill or postoffice.

Davidson puts his suit to have the road opened upon the ground that it had been used so long by himself and the public generally as to give him and them a prescriptive right to its use of which they could not be deprived by Nantz. And he further insists that the use has extended over such a long period of years as to show that it was enjoyed by the users under a claim of right, thus bringing the case within the rule announced in Smith v. Pennington, 122 Ky. 355; Riley v. Buchanan, 116 Ky. 625; O'Daniel v. O'Daniel, 88 Ky. 185; Hansford v. Berry, 95 Ky. 56; Wilkins v. Barnes, 79 Ky. 323; Talbott v. Thorn, 91 Ky. 417; Newcome v. Crews, 98 Ky. 339, and many other like cases in which the court has held that a grant of a right of way by prescription will be presumed from an uninterrupted, unexplained and adverse use of such a nature as to indicate a claim of right for 15 years or more.

But the evidence does not bring this case within the rule announced in this class of cases. The travel was not of such a nature, or of such extent, or under such circumstances, as to lead us to the conclusion that this way through the woodland had been used for as much as 15 years under a claim of right by the persons using it. As was said in Wray v. Brown, 155 Ky. 757: "There is and ought to be a marked difference between the right of the public claiming a passway when the travel has been for many years through open, uncultivated woodland, and where it has been through enclosed, cultivated land." And the facts of this case are quite similar to those appearing in Bowman v. Wickliffe, 15 B. Mon. 84, where the court used the following language, which is very applicable here:

"It has been usual and. customary in this state to travel over unenclosed woodland without asking the permission of the owner; and considering the extent and universality of this custom, it tends strongly, if not conclusively, to repel any presumption that might otherwise arise in such a case from long continued use of the

grant of the right of way by the proprietor of the land. The mere use of this road, then, during the period of time that the land through which it passed was unenclosed woodland, cannot be regarded as proving anything detrimental to the rights of the proprietors of the land. Roads also are frequently made and left open by the owners of land for their own convenience, and the mere fact that other persons are permitted to use and enjoy such roads does not, of itself, tend to create a presumption of a grant of the right of way by the proprietor of the soil to them or to the public.''

In the O'Daniel, Talbott and Hansford cases, *supra,* there was some apparent modification of the rule laid down in the Bowman case, but an examination of these cases will show that the court was largely influenced by the fact that the passway claimed was necessary to the use of the land occupied by the persons asserting a right to the passway.

It is further said in Wray v. Brown, *supra,* and is pertinent here, that ''A great many passway cases have been written by this court, but in no two of them were the facts exactly alike, and as the question whether the claim of right to a passway should be recognized must depend very largely on the facts of each case, the court has found it difficult to announce any controlling principle applicable to this class of cases. . . .

''We might also well here observe that in nearly all of the cases where the right to a passway has been sustained upon conflicting evidence, it has appeared either that the passway was necessary to enable the person claiming it to get to a public road, or that it was a way which had been uninterruptedly used for many years by the public through inclosed land; while in nearly all of the cases where the right to a passway has been denied on conflicting evidence it appeared that the passway was not a necessity or that it did not run through inclosed, cultivated land for the length of time required to create the presumption of a grant.''

We have read quite carefully this record and while we do not put our decision upon the ground that changes were made in the passway, or that it is not a way of necessity, or that the continued use of it would damage Nantz, these circumstances are to be considered in connection with others in determining the right to a passway when that right is not rested upon persuasive evidence that the passway had been used by the public gen-

erally under a claim of right for more than 15 years, especially when it is sought to establish the right to a passway by prescription through unenclosed woodland.

Our opinion is that Davidson failed to establish a right by prescription to this passway, and the judgment is affirmed.