## Luscher et al. v. Lewis et al.

(Decided June 3, 1932.)

J. S. LUSCHER for appellants.

POLK SOUTH, Jr., for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In the early history of Franklin county there was constructed by someone and by some means a road

extending from the north terminus of Wilkinson street in the city of Frankfort down the Kentucky river in a northwesterly direction for a distance of some four or five miles, and at some period someone put rock on that road, but the portion so surfaced terminated at about the named distance from Frankfort. At that point the traveled way turned at a considerable angle to almost due north and extended its way to a point further down the river at which it is claimed there was once a ferry; but, if that be true, it is conclusively shown that no one owned or operated a ferry at that point for profit, nor was it shown that any one ever obtained from the proper authorities the right or privilege to maintain and operate a ferry at that point, although our present ferry statute was originally enacted in 1796 and was periodically amended up to 1831 so as to conform to our present statute relating to ferry rights and privileges, and which is now chapter 49 of the 1930 Edition of Carroll's Kentucky Statutes (section 1800 et seq.). See Morehead & Brown's Statute Laws of Kentucky, vol. 1, p. 706. From the end of the surface rock on the road, and at the place where it turns north, it is a dirt road to its termination at the supposed former ferry, and until about 1922 there was no fence on the north side of that road from the point where the rock ceased to the next turn of the road to the northwest. In the course of time the land along the west side of that distance of the road became known as the Graham farm, but in 1921 the appellee Ed. O. Duvall purchased it from the Graham heirs and soon thereafter built his fence on the west side of the road from the point of the turn where the rock ceased to where it turned northwest.

R. B. Lewis eventually became the owner of the land on the east side of that unsurfaced road from its beginning to and beyond the point of its first turn northwest, and he also became the owner of land extending for a considerable distance north of that point. The old unrocked portion of the road, (and which is referred to in this record sometimes as the ''Old Ferry road'' and sometimes as the ''Lewis Ferry road,'' and which we will also refer to as the Duvall road), made a turn in a northwesterly direction from due north at a distance of something like 470 feet north of the point where the rocked portion of the old road ceased, and

which rocked portion of the road back to Frankfort seems to have been known as "Leestown Pike."

On the 26th day of May, 1888, R. B. Lewis and wife conveyed to Waller P. Lewis that portion of his farm, containing 25 acres, lying immediately east of the 470 foot space, which, as we have said, is the distance between the beginning and the first turn of the Old Ferry or Duvall road, and in that deed he expressly said: "But there is reserved and excluded from said boundary and land a piece of land one pole in width beginning at 'D' the cedar gate post and extending along the line that width from 'D' to 'E' the beech tree corner to Graham and from 'E' to 'A' the beginning which strip or piece of land is not conveyed by this deed." That description of the reservation so made extended from the end of the rock portion of Leestown Pike to the turn northwest of the Old Ferry or Duvall road for the stated distance of about 470 feet. From the point of the beech tree corner, and running in a north direction, R. B. Lewis and his predecessors in title had therefore used a passway to get to the residence on the farm through which it ran and, perhaps, to some tenant houses thereon. Somewhere near the beginning of this century R. B. Lewis died, leaving a number of heirs and his remaining farm, left after the sale of the 25 acres to Waller P. Lewis, was divided among them, and in each deed the right to the passway as theretofore used for the benefit of the entire Lewis farm was expressly reserved, and deeds made by such heirs since that division contained the same reservation. That passway, which we will hereafter refer to as the Lewis road, paralleled the Duvall road for the 470 feet distance referred to, but the latter one is much older, and its surface through long-continued use is upon an average of 3 feet lower than the parallel Lewis road immediately east of it.

The Lewis road has continuously been used by the owners of and tenants on the divided parcels of the old R. B. Lewis farm, and also used by those who have owned the Waller P. Lewis place; its present owner being the appellant A. E. Luscher, while the appellee E. H. Luscher has acquired practically all of the old R. B. Lewis farm that was left after the conveyance of the 25 acres to W. P. Lewis. The other owner of one portion of the R. B. Lewis farm is the appellee Milton Lewis. Long prior to the deed executed by R.

B. Lewis to Waller P. Lewis there was a fence between the Duvall road and the Lewis passway or road throughout the distance paralleled by them, and that fence existed in one form or another until some twenty or thirty years ago, and some of its old posts are still standing. There were also gates across both roads where they diverged at the north terminus of the 470 feet distance referred to. Likewise there were gates at the point where the paralleling of those roads began, and which was where the rock on the old Leestown pike ceased, and portions of those old gateposts are still standing.

The record furnishes strong intimation that Duvall when he built his fence along the paralleled distance of the two roads, after he purchased his farm in 1921, encroached upon the Old Ferry or Duvall road, and narrowed its space between his new fence and his line east of it, and which is occupied by the road to the width of about 12½ feet. Occasionally since the time when the fence separating those two roads rotted down, and especially since Duvall built his fence and thereby narrowed the space for the road, travelers upon it going in opposite directions pulled out into the Lewis road if they could find a place where they could do so, but those having occasion to travel over the Duvall road scarcely ever went upon the Lewis road, except when such necessity for passing a meeting traveler arose as indicated, and then only when they could get from one road to the other, but when that could not be done some other means of passing was employed. Of course, throughout all the time the owners, tenants, hired hands, and others having any business with them, traveled the Lewis road, but the evidence is so scant as to be entirely unconvincing that the public generally traveled it in any manner whatever so as to indicate that its use was "under a claim of right." All such use was for the momentary and temporary purpose indicated, of passing a meeting traveler on the Duvall road, or to get to some portion of the Lewis farm situated farther north by the persons and for the purposes indicated. There exist now, and have existed perhaps from the beginning, trees along the line of the old fence separating the Duvall and the Lewis roads for their entire paralleled distance, and everything upon the ground, as well as the great preponderance of the testimony, conclusively establishes

that the space occupied by the Lewis road was never a portion of the Duvall road, whether the latter be a private or a public one.

In 1931 the appellant, E. H. Luscher, constructed a fence along the line where the old fence was built, separating the two roads for their paralleled distance and not far from the point where the rock on the Leestown Pike stopped, and where the turn of the road to the north is made, he also constructed a gate across the Lewis road. Some of the appellees, or all of them, threatened to remove the fence and gate, and one of them swore out a warrant against E. H. Luscher, in which he was charged with obstructing a public road, and he was tried and convicted before the appellee, Judge James H. Polsgrove, and a fine was assessed against him. He then brought this action against appellees to establish his right to construct the fence and the gate at the places mentioned, and to enjoin defendants from interfering therewith or from removing the fence or the gate. Appellant, A. E. Luscher, became a party to that action, and the final line-up was, E. H. and A. E. Luscher on one side, and Milton Lewis, Ed. Duvall, McDowell Long, and County Judge Polsgrove on the other side; but the latter took no part in this litigation and his connection therewith was and is purely nominal. The appellees' pleadings denied the right of E. H. Luscher or any one else to construct either the fence or the gate in question, for the reason, as claimed, that the Lewis road was a part of the Old Ferry or Duvall road which it was alleged was a public one. But if mistaken in that, then they contend that they have prescriptive passway rights and privileges to use the Lewis road as an easement of ingress and egress to and from their lands and the places to which it leads. Following pleadings made the issues, and upon submission, the court dismissed the appellants' petition and cross-petition, and to reverse that judgment they prosecute this appeal.

The only grounds upon which appellees could possibly succeed in defeating appellants' right to construct and maintain both the fence and the gate in controversy are: (1) That the entire space occupied by the Duvall and Lewis roads for the distance they parallel each other was and is a part of the Old Ferry or Duvall road, and it is thereby a public one because the latter is a public road; but, if mistaken in ground 1, and if the

Lewis road does not occupy any ground that was formerly a public road, but is only a private one, then (2) that appellees, or some of them, have an easement privilege or right in and to its use and which the construction of the fence and the gate complained of unreasonably interferes with. We will briefly consider those two grounds in the order named.

1. No effort is made to prove the entry of any order of any court in Franklin county establishing any public road by the name of the Old Ferry or Lewis Ferry road, and which, as we have seen, is now the Duvall road. Perhaps there is enough in the case for such an inference to be drawn and to support a finding that the Duvall road has, in some manner recognized by the law, become or has been converted into a public road. But it does not follow from that fact that it does now or ever has included or covered the space occupied by the Lewis road or passway. It is most conclusively shown that the Duvall road was laid out and traveled upon the exact territory and space now occupied by it for a great number of years before there was ever any Lewis passway paralleling it. Indeed, there is no testimony showing that such passway was ever laid out or traveled prior to the acquisition of the land by R. B. Lewis. Neither is the character of use, above referred to, by those traveling the Duvall road, of such a nature and kind as to convert the Lewis road into a public one, and to thereby annex it to the Duvall road which it parallels.

The rights in and to one's land, or in and to a private passway over it, may not be taken away or impaired by the sporadic character of use by the members of the public that is proven in this case, and which is sustained by every opinion from this court, as well as all text-writers to which we have had access. Two of our comparatively recent opinions so holding, and in which many others are referred to, are Stephens v. Hamblin, 195 Ky. 428, 242 S. W. 597, and Snyder v. Carroll, 203 Ky. 320, 262 S. W. 290. We will not insert excerpts from those opinions, but will refer the reader to them. Counsel for appellees seems to be imbued with the idea that a continued use of a passway for as much as fifteen years gives to the user a prescriptive right thereto, and he cites some authorities which he claims sustain that proposition. But he omits from his statement of the law, as he conceives it, a most im-

portant element, and which is, that the use shall be, in order to accomplish the purpose for which he contends, "under a claim of right." The cases and authorities supra and others cited in those opinions say that a continued use of a passway uninterruptedly for fifteen years will raise a presumption that its inception was under and with a claim of right, and the burden is then cast on the owner of the servient estate to overcome that presumption, and which we think has been done completely in this case.

However, it is doubtful if the rule would apply to the mere right or privilege to go over on to another's land or easement for the purpose of passing or allowing another to pass while traveling on another parallel road, though it be a public one. In this case, as we have seen, the two roads at the beginning were not only separated by a fence, but each of them had gates across them at the termini of their 470 feet paralleled distance, and that burden upon the use continued until the fence and gates were destroyed by the ravages of time. But it is insisted that in 1924 the appellee, McDowell Long, was appointed surveyor of the Old Ferry or Duvall road, and that he with some hands allotted to him thereafter worked it, and which it is confidently argued conclusively establishes that the Lewis road or passway, for the paralleled distance referred to, was and is a part of the public road. Counsel is clearly in error in arriving at that conclusion, since the appointment of Long as overseer of the Old Ferry or Duvall road is perfectly consistent with the separate existence of the Lewis road as a private passway alongside of it. Counsel endeavored to get Mr. Long while on the stand to say that his jurisdiction as such surveyor extended over the Lewis passway, but witness declined to so state, and answered by saying, "I think they were," to a question propounded to him as to whether or not both the Lewis and Duvall roads were under his jurisdiction. However, if he had made a positive and unqualified answer that they were, it would not then be sufficient to establish the fact in the face of other testimony in this record.

Another fact, solemnly relied on in support of the contention that the Lewis road along the paralleled distance was a part of the public road, was, that some time in 1930 or 1931 the justice of the peace of the magisterial district including the involved territory

consented, upon the application of appellants, to crush some rock which the latter hauled and put upon the Lewis passway in repairing some mudholes and filling up some low places in it. The conclusion is sought to be drawn therefrom that the accommodating act of the magistrate, granted at the request of some of the owners of the passway, converted the latter from a private into a public one. The appellants themselves hauled the rock and put it upon and scattered it over the passway. The only services rendered in connection therewith by any official was the mere crushing of the rock with the permission of only one justice of the peace of the county. To hold that such an act in such circumstances would serve in law to convert a private road into a public one would require a stretching of legal principles far beyond the limits of our understanding of the law, and which, if upheld, would not only set at naught well-settled principles relating thereto, but its recognition would add unbearable burdens upon the various counties of the state in having to maintain, as public roads, all passways to which any public officials may have accommodatingly contributed the slightest improvement. We therefore conclude without further elaboration that ground 1 was by no means established at the trial.

2. What we have said relative to the use made by the general public of the Lewis road applies with equal force to the acquisition of prescriptive rights in private individuals to use it. Such indulged use, as we have hereinbefore described, was and is by no means inconsistent with its being originally permissive, and the testimony as a whole is most convincing that such use was purely permissive and that none of the appellees may be said to have acquired any prescriptive rights of any character or nature in and to that road, and, if the court so held in its judgment dismissing the petition, we are constrained to hold that it was error because not sustained by the proof in the case.

It will be noted that, by the reservation in the deed of R. B. Lewis to Walter P. Lewis, hereinbefore referred to and inserted, there was not the retention of a mere easement over any portion of land thereby conveyed; but, on the contrary, there was a retention of the title by the vendor to the strip of land 16½ feet wide for the purpose of a passway. The right to it as well as the title thereto descended to the heirs of R.

B. Lewis as an appurtenant to the respective portions of his farm allotted to them in the division of his real estate, and which under all authorities was and is an appurtenant to the portion so allotted. The owners of the passway therefore have a greater interest in that reserved strip covering the distance in dispute than a mere easement with the title held by the servient owner, since they own the fee in and to it, having obtained it through R. B. Lewis, who reserved it and died the owner of it, and it descended to his heirs the same as did all other portions of his landed estate. Therefore the appellee, Milton Lewis, who owns one of the allotted portions to one of the heirs of R. B. Lewis, is the only adverse litigant to the two appellants who has any right or voice to raise any objections against any of the obstructions complained of, or against anything that may be done to the Lewis passway resulting in a curtailment of his right as such joint owner.

The question therefore is, not what one joint tenant may do or perform with reference to the jointly owned property, as counsel for both sides argue, but rather, whether the things done or proposed to be done (the erection of the fence and gate in this case) constitute any curtailment or abridgement of the passway in the condition that it was originally constructed, opened, and used? We have hereinbefore seen that, as originally reserved and appropriated, it had a fence on the precise line where the new fence involved in this case was constructed. It also had a gate at its south terminus at almost the same spot where the new one that is questioned in this case was erected. Those burdens upon the passway, if they be considered as such, were placed upon it at the beginning, and were upon it with their obstructive effect when the right was made an appurtenant to the remaining lands of R. B. Lewis, including that portion now owned by Milton Lewis. Nothing has occurred since the old fence and the old gate rotted down to show a relinquishment or surrender of the right to maintain a fence along that line or a gate at that place. Their recent erection by E. H. Luscher as the successor in title of R. B. Lewis to the north portion of his original farm is but a restoration of the passway to the condition it was when the appurtenant right was reserved and acquired, and neither Milton Lewis nor any other successor in title from R. B. Lewis, ever acquired any greater right in and to the

passway, nor was the right to maintain the fence and the gate in question ever lost or surrendered in any manner so as to extinguish it and prevent such structures from ever thereafter being installed. We therefore conclude that the appellees have manifested no right to object to the erection of the fence and gate in question, and that the court erred in dismissing the petition and cross-petition.

Wherefore the judgment is reversed, with directions to set it aside and to render one in conformity with the principles of this opinion.