## Barnett v. Toole.

(Decided March 6, 1934.)

B. J. BETHURUM for appellant.

H. C. KENNEDY for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The petition of the appellant, C. C. Barnett, to enjoin the appellee, Ed Toole, from obstructing a passway was dismissed.

The easement is claimed by prescription. Thirty years or so ago on a parcel of about 13 acres, Pierce Massey built a house about 40 feet from the Bell-Mills county road in Pulaski county and at an elevation of some 12 feet above the road. A hundred feet or more back of the house, and 18 or 20 feet higher, he built a barn. The division line between his and Gregory's land was within a few feet of these buildings. Massey at once began to go in and out of his barn lot across Gregory's land, a distance of about 400 feet, to the county road. No roadway was ever built from that residence or barn. He continued to live there and use this way for all purposes for some 18 years. Massey testified that he never asked anybody for the right to cross this land; never claimed any such right; and understood that he would have to stop whenever there was an objection. Gregory testified that Massey never had any right to go over his land, but he let him do so as a matter of good neighborship, believing that he could stop him whenever he wished. Gregory sold out and for a short while lived in the Massey house, and he too continued to use the passway. Barnett acquired the place about nine years before this suit and traveled it as did his predecessors. He had repaired or worked the road some. Gregory's vendees made no objection. The appellee, Toole, purchased that property about 18 months before this litigation. Several years ago Barnett tried to buy two acres adjoining his place, which in-

cluded the road, but did not succeed in doing so. There is evidence that while he was trying to buy the land he remarked that he didn't want to make roads over other people's property; but Barnett denies that statement and insists that he only wanted to square up his lines. Barnett assisted in surveying the property for the purpose of a judicial sale about five years ago and then made no claim of any right to pass across it.

During all of this period the property was uninclosed woodland. Toole began to clear it off with a view of cultivating the entire parcel. He obstructed the passway and denied any right to Barnett to travel it. While only the right by prescription is claimed, it is shown that a roadway on Barnett's property from the county road to his barn would be so steep as to be almost useless. But this passway is primarily one of convenience rather than of necessity. On the other side, there is the cutting off of a small corner of defendant's land from the rest of his farm and the interference with the cultivation of the field. So there is a balancing of equities. We have, therefore, this state of case: The uninterrupted private passage over the uninclosed woodland of another for 30 years without any express permission or objection, with no express claim or notice of a right or a grant, and with no affirmative act by either party indicating a claim of a right or a recognition of such.

The appellant invokes the long-established rule that the use of a passway for so great a length of time creates the presumption that it was used under a claim of right, thereby casting the burden upon the owner of the servient estate to show that it was a permissive use. It is argued that the defendant did not sustain that burden.

Throughout the many opinions the court has recognized a distinction where the passway traversed uninclosed woodland and where it was over cleared land. The leading case involving a passway by prescription over woodland is Bowman v. Wickliffe, 54 Ky. (15 B. Mon.) 84, which was decided in 1854. The extent and universality of the custom of the times for people to travel uninclosed woodland without asking permission of the owner, it is said, "tends strongly, if not conclusively, to repel any presumption that might otherwise arise, in such a case, from long continued use of the grant of the right of way by the proprietor of the

land.'' There has been some little modification in the principle of presumption during the years, but, as is pointed out in Wray v. Brown, 155 Ky. 757, 160 S. W. 488, those modifications rest upon the facts of the particular cases, such as that the passways were ways of necessity. There is also recognized a distinction where the passway is used by the public generally and where it is used by an individual or those who occupy a specific tract, a more liberal view towards sustaining the claim of right being entertained in the case of public use than where it is private or for the special benefit of a certain property. Smith v. Pennington, 122 Ky. 355, 91 S. W. 730, 28 Ky. Law Rep. 1282, 8 L. R. A. (N. S.) 149; Wray v. Brown, supra.

The facts in Smith v. Pennington, supra, with respect to the use of a passway without express permission or objection, are like those in the instant case; but it appears that 16 years before the suit was filed the land had ceased to be open woodland and the owner had put gates at either end of the passway and had maintained them until he was induced to substitute a fence because of the frequency with which the gates had been left open. It was held that his conduct was evidence of a recognition of the continued right to enjoyment of the passway. So that case is distinguishable. The facts in the Wray Case are somewhat analogous, and it was held upon four specific grounds that the owner of the land had the right to close the passway. Three of those grounds are present in this record, the fourth being that the owner had obstructed and practically stopped the use of the road for about two years without objection. The reasoning of the opinion is very pertinent. Reviewing the rules and their application, they are thus comprehensively presented in Stephens v. Hamblin, 195 Ky. 428, 242 S. W. 597, 598:

> ''It will be observed that, in order to raise the presumption of a grant because of long-continued use of the passway, the use must be not only uninterrupted and continuous, but it must also be unexplained, which means that, if the plaintiff's testimony shows facts from which the use was not under the claim of right, and therefore adverse, the presumption will not arise, although the use has been for the required length of time; and furthermore, that the presumption will not arise from the mere use for the required length of time when the pass-

way traverses uninclosed woodland, nor will it arise when it appears that the beginning of the use was permissive, unless in the meantime the owner of the dominant estate asserts a claim of right to the use, and of which claim the owner of the servient estate has notice. It will therefore be seen that it has been the disposition of this court in more recent years to restrict the right of one to acquire title to an easement of this character whereby another, through a mere neighborly act, may be deprived of his property, and it become vested in the one whom he favored. It therefore becomes necessary that each case should be determined upon its own facts, and it should clearly appear therefrom that the right to the easement has been acquired by the necessary adverse user. Therefore, to prevent a wrongful appropriation of another's land, the presumption allowed by the above general rule will be overcome by any facts or circumstances showing that it would be inequitable and unjust to strictly enforce it."

In Snyder v. Carroll, 203 Ky. 320, 262 S. W. 290, the court made a further review of the authorities and pointed out, among other things, that the application of the principles and rules must necessarily be determined by the facts of each case. It was also suggested that changed economic and road conditions should not be overlooked. While those changes, it is said, cannot alter settled and prevailing fundamental rules, they do suggest greater liberality in the measurement of the evidence required of the landowner to discharge the burden cast upon him to show that the use of the passway was permissive after proof by the claimant of its long existence. So in these days it should and will take less evidence to overcome the presumption of a vested license than it did in an earlier day. See, also, Davidson v. Nantz, 177 Ky. 50, 197 S. W. 520; Hendrickson v. Cruse, 221 Ky. 190, 298 S. W. 710; Breeding v. Bentley, 226 Ky. 238, 10 S. W. (2d) 842; Ross v. Steele, 243 Ky. 505, 49 S. W. (2d) 309; Luscher v. Lewis, 245 Ky. 64, 53 S. W. (2d) 170.

On the one side is the mere travel for a short distance over hilly woodland without objection. On the other is the positive evidence of those who used the passway down to within the last nine years that they did so without any claim of right and with the under-

standing that it was by a neighbor's courtesy which could be withdrawn at any time. The plaintiff during these nine years never by word or deed gave notice to the owner that he was traveling over his land under any claim of right. At no time did the owner in any way whatsoever indicate a recognition of any right on the part of the users of the passway, and the affirmative evidence is that they were merely favoring their neighbor.

The court is of opinion that the judgment denying the injunction and thereby holding that plaintiff does not have the easement asserted by him is correct.

Wherefore the judgment is affirmed.