## Wray, et al. v. Brown, et al.

(Decided November 13, 1913).

### Appeal from Hickman Circuit Court.

1. Passways—Difference Between Travel Under a Permissive Use and Under a Claim of Right—Burden of Proof.—The general rule has been time and again laid down that where the use of the passway has been merely permissive on the part of the owner of the land, no length of time will deprive him of the right to reclaim it; but, on the other hand, where the use has been asserted as a matter of right by the public, and this use has continued uninterrupted for as much as fifteen years, this uninterrupted use constitutes an easement that the users cannot be deprived of. It is a further rule that where the use has continued for a long period of time, the burden is on the owner of the land to show that it was merely permissive.

2. Passways—Distinction Between Travel Over Uninclosed Woodland and Through Inclosed or Cultivated Land.—A distinction is made between travel over uninclosed woodland and travel over a well-defined way or inclosed or cultivated land, and this distinc-

tion should always be kept in mind when the facts bring the case within it. There is and ought to be a marked difference between the rights of the public claiming a passway when the travel has been for many years through an open and uncultivated woodland and where it has been through inclosed or cultivated land. When an owner permits the public for a long period of years to travel through his cultivated or inclosed land without attempting to interfere with the use, his action implies his consent to the use; while the mere fact that he permits the public to travel at liberty through uninclosed woodland might not raise any presumption of a grant.

3. Passways—Necessity for—Rule of This Court Where Evidence is Conflicting as to Necessity for Way.—In nearly all the cases where the right to a passway has been sustained upon conflicting evidence it has appeared either that the passway was necessary to enable the person claiming it to get to a public road, or that it was a way which had been uninterruptedly used by the public for many years through inclosed land; while in nearly all of the cases where the right to a passway has been denied on conflicting evidence it appeared that the passway was not a necessity or that it did not run through inclosed, cultivated land for the length of time required to create presumption of a grant.

4. Passways—Facts of' This Case Showing Parties Not Entitled to Passway.—The appellees are not entitled to a passway, (1) because they do not need it to go to the county seat, to the voting place, to the railroad station, to schools or to churches; (2) because the travel through uninclosed woodland for 25 or 30 years under the circumstances of the case did not create any presumption of a grant; (3) because to establish this passway at the place claimed would subject the land owner to large and unnecessary damage; (4) because the land owner's obstruction of the beaten road through the uninclosed woodland, and the further fact that he inclosed the woodland with a fence obstructing for a time the travel, without objection or complaint, show that the public who had been traveling through there did not do so under any claim or right.

R. L. SMITH, J. D. VIA for appellants.

ROBBINS & ROBBINS, JOE W. BENNETT and GUS THOMAS for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This is a passway case. The appellees, Brown, Cochran and Sutberry, claiming to have a right of passway over the lands of the appellants, Wray and wife, brought this suit in equity to enjoin them from obstructing the way. The lower court granted the relief sought

and the appellants, who were defendants below, bring the case here for review.

It appears from a map filed with the record that the appellees live nearby and have easy and uninterrupted access to a public road known as the Hickman and Oakton road. This road runs east and west. Four hundred yards north of this road, and running parallel with it, is the Oakton and Hailwell road. The tract of land owned by the appellants over which the passway is claimed lies between these two roads and contains 82 acres. The asserted passway runs across the 82 acres connecting the two roads mentioned near the western end of the 82 acres. At the eastern end of the 82 acres the two roads are connected by a public road. If the appellees, and they are the only ones who appear to be particularly interested in the opening of this passway, desire to go in a northerly direction to the towns of Columbus or South Columbus or the postoffice at Hailwell or Cromwell's Mill, or the churches in that section, they could go over this passway if it were opened from the Hickman and Oakton road to the Oakton and Hailwell road and by way of this road to the places named, or they could go over the public road that connects the two roads, but to go over the public road would be something over a mile farther than to go over the passway. If they wished to go to Clinton, the county seat of Hickman County or to the town of Oakton, where there are churches and a post office and a railroad station, they would not travel this passway, but would go on the Hickman and Oakton public road. So that this passway is not necessary to enable the appellees and others who live in that neighborhood to go to the county seat or the postoffice or to the railroad station or to church. Nor is it used by them in going to these places. It is only more convenient for them when they wish to go north towards Columbus, and this convenience consists simply in the fact that it is about a mile nearer to go by the passway than it would be to go around by the public road.

The evidence also shows that to open a passway across this land would damage the appellants between $500 and $1,000. It is further shown that the land over which this passway is claimed is uncultivated woodland and was uninclosed until about ten years ago. That the public generally for thirty or forty years have traveled over this woodland from one of the public roads to the other, excepting a period of about two years

within the last ten years when the land was inclosed and the passway obstructed by a fence erected by appellants. The route over which the public traveled in going across this land, except at the points where it left the two public roads, was changed from time to time as conditions made it advisable. The land was not in cultivation and so it was a matter of little consequence where the line of travel went, and persons who crossed this land went through the woods any way they wanted to go, selecting the way that they thought most accessible. As is always the case in travel of this kind when a way is marked through a woods or unenclosed field the travel will follow the marked. way until it becomes muddy or obstructed, and then a new route close by will be followed. But subject to these changes in the location of the route, which were made from time to time, the general course of travel through the woodland was the same.

It is also shown that about ten years ago the appellants extended their clearing on the east out of the then marked passway and to inclose the clearing built a fence in the marked passway, thus obstructing it entirely. When this was done a new route following in a general way the line of this fence was adopted by those passing through. It is further shown that about six or eight years ago the appellants inclosed this woodland by a fence on all sides, leaving a gate on the north end for their own use, and that the travel through this woodland was obstructed and practically stopped for about two years.

Although the appellants put their fence as stated in the road that had been marked by travel as a passway and afterwards closed the passway by fencing, it does not appear that any person complained or objected in any manner to the fence being put in the traveled way or to the inclosure fences that obstructed the use of the passway. No effort was made by any person to require the removal of either of these obstructions to the travel.

The foregoing is, we think, a fair statement of the facts shown by the record. On these facts the argument for appellees is that they and the public generally have been using this way as a matter of right for thirty or forty years, and this use has ripened into a grant of which they cannot now be deprived. On the other hand, the argument for appellants is that the travel through this uninclosed woodland in the manner stated was permissive in its nature, and that the public never had or

claimed any vested right is shown by the fact that no complaint was made of the obstructions of the passway which we have pointed out.

A great many passway cases have been written by this court, but in no two of them were the facts exactly alike, and as the question whether the claim of right to a passway should be recognized must depend very largely on the facts of each case, the court has found it difficult to announce any controlling principle applicable to this class of cases.

The general rule, however, has been time and again laid down that where the use of a passway has been merely permissive on the part of the owner of the land, no length of time will deprive him of the right to reclaim it; but, on the other hand, where the use has been asserted as a matter of right by the public, and this use has continued uninterrupted for as much as fifteen years, this uninterrupted use constitutes an easement that the users cannot be deprived of. It has further been ruled that where the use has continued for a long period of time, the burden is on the owner of the land to show that it was merely permissive. In Smith v. Pennington, 122 Ky., 355, this idea was thus expressed:

"While it is true that where the use of a passway is merely permissive on the part of the owner of the land, a privilege extended by him to his neighbors without any intention on his part to surrender his right to it, or purpose on their part to assert claim, and when there is no act or conduct by either that would indicate that allowing the use of the way was other than a neighborly act and it is recognized that the privilege is one that may be revoked at any time by the owner of the land, its use for fifty years will not confer the right to claim it against the owner, or prohibit him from closing or discontinuing it. On the other hand, if the use has extended over a long period of years, very slight evidence will be sufficient to show that it was enjoyed under a claim of right, and when the proprietor undertakes to close the passway the burden is on him to show that the use was merely permissive, and to explain away the presumption that its uninterrupted enjoyment for more than fifteen years was not exercised under a claim of right."

A further distinction has been made between travel over uninclosed woodland by the public and travel over a well-defined way through inclosed or cultivated land, and this distinction should always be kept in mind when

the facts bring the case within it. In other words, there is and ought to be a marked difference between the rights of the public claiming a passway when the travel has been for many years through open, uncultivated woodland and where it has been through inclosed or cultivated land. And so, too, there is and ought to be a marked distinction between the right of the owner of land to stop by inclosure or cultivation long continued travel through a woodland and to stop long continued travel through inclosed or cultivated land.

There are few owners of uninclosed woodland who pay any attention to the amount of travel over it or through it. The travel does not do any harm to the land or interfere with the interests of the owner; but when there is much travel through inclosed or cultivated land it is, as a rule, a serious inconvenience as well as source of annoyance to the owner, and injury to his property. It would seem, therefore, that when an owner permits the public for a long number of years to travel through his cultivated or inclosed lands without attempting to interfere with the use, his action implies his consent to the use, while the mere fact that he permits the public to travel at liberty through uninclosed woodland might not raise any presumption of a grant. In Bowman v. Wickliffe, 15 B. Mon., 84, this court used the following language that is as apt now as it was in 1854 when the opinion was written:

"It has been usual and customary in this State to travel over uninclosed woodland without asking the permission of the owner, and considering the extent and universality of this custom it tends strongly if not conclusively to repel any presumption that might otherwise arise in such a case from long continued use of the grant of the right of way by the proprietor of the land. The mere use of this road then during the period of time that the land through which it passed was uninclosed woodland cannot be regarded as proving anything detrimental to the rights of the proprietors of the land."

It is true that in the cases of O'Daniel v. O'Daniel, 88 Ky., 185; Talbott v. Thorn, 91 Ky., 417, and Hansford v. Berry, 95 Ky., 57, the principle announced in the Bowman case as to the presumption of a grant where the travel was through uninclosed woodland was modified. But an examination of each of these cases will show that the court was largely influenced by the fact that the passway claimed was necessary to the use of

the lands occupied by the persons asserting a right to it and had been so used by them without interruption for many years.

We might also well here observe that in nearly all of the cases where the right to a passway has been sustained upon conflicting evidence it has appeared either that the passway was necessary to enable the person claiming it to get to a public road, or that it was a way which had been uninterruptedly used for many years by the public through inclosed land; while in nearly all of the cases where the right to a passway has been denied on conflicting evidence it appeared that the passway was not a necessity or that it did not run through inclosed, cultivated land for the length of time required to create the presumption of a grant.

Without attempting a further review of the many cases on this subject, we have reached the conclusion, after a careful consideration of the entire record, that the appellees are not entitled to a passway through this land (1) because they do not need it to go to the county seat, to the voting place, to the railroad station or to schools or churches; (2) because the travel by the public through uninclosed woodland for 25 or 30 years under the circumstances of this case did not create any presumption of a grant; (3) because to establish this passway at the place claimed would subject the land owner to large and unnecessary damage; (4) because the land owner's obstructions of the beaten road through the uninclosed woodland, that the public had been traveling for many years, by building a fence in it, without complaint or objection from any person, and the further fact that he inclosed the woodland with a fence about six years ago, obstructing the travel through the woods for some two years without objection or complaint, show that the public who had been traveling through there did not do so under any claim or right.

Wherefore, the judgment is reversed, with direction to enter a judgment dismissing the petition.