### Snyder, et al. v. Carroll, et al.

(Decided May 23, 1924.)

### Appeal from Grayson Circuit Court.

1. Easements—Essentials to Establishment of Prescriptive Passway Stated.—Where user of passway in condition sought to be established was from its incipiency under a claim of right, and continued uninterruptedly and unexplained for fifteen years, title to easement will ripen either in individual or public who claimed it.

2. Easements—Character of Presumption from User for Fifteen Years Stated.—If user of passway has been for fifteen years, a presumption arises that easement was founded in grant, and that past use was adverse, but such presumption is only prima facie.

3. Easements—Permissive Use Cannot Ripen into Title to Easement.—Title to passway easement cannot result from permissive use, regardless of length of time of use.

4. Easements—Fact of Inclosure of Passway Only Circumstance Bearing on Question Whether User Adverse.—Court will more readily infer adverse user when passway inclosed than when it runs across uninclosed woodland, but fact of inclosure is only circumstance bearing upon ultimate question of adverse use.

5.  Easements—Maintenance of Gates Some Evidence that Use of Pass-way Not Adverse.—Fact of maintenance of gates at termini of pass-way by owner of servient estate is evidential one of considerable im-portance to show use was not adverse.

6.  Easements—Exercise of Right to Change Location of Passway Considered in Determining Whether Use Adverse.—That owner of servient estate exercised, without objection, his right to change location of passway whenever he saw proper, is to be considered in determining whether user was adverse, though passway was con-tinuously located in same vicinity, with practically same termini.

7.  Easements—That there are Now Many Roads and Land More Val-uable Considered in Determining Adverse User of Passway.—The fact that land has become more valuable, and state has become checkerboarded with roads, should be taken into consideration in determining whether landowner has discharged burden cast on him to show that use of passway was permissive by plaintiff after proof of long continuance.

8.  Easements—Acquisition of Passways by Presumed Grant Ought Not to be Founded on Mere Neighborly Courtesies.—Law pertaining to acquisition of passways by presumed grant should not be ex-tended so as to work that result through mere neighborly courte-sies between landowners.

9.  Easements—Use of Passway Properly Found to be Permissive.—Use of passway over land held properly found by court to be permissive.

ALLEN P. CUBBAGE and L. A. FAUREST for appellants.

J. M. CAMPBELL and W. O. JONES for appellees.

Opinion of the Court by Judge Thomas—Affirming.

Spring Lick and Goff's Crossing road, and Caney-ville and Cromwell road, are parallel public roads in Grayson county running east and west at the point in-volved in this litigation. Caney creek runs in the same direction about midway between those two roads. At right angles to both roads, and in like manner across the creek at that point runs the passway involved in this case, and traverses the farms of plaintiffs and appellees, J. M. Carroll and P. O. Bratcher; and likewise those of Bob Cooper and Mrs. Martha Brown at its southern terminus. About midway between the creek, which is the southern line of Carroll's farm, and the Spring Lick and Goff's Crossing road is the track and right of way of the Illinois Central Railroad Company, which also par-allels the two public roads as well as the creek. Defend-ants, who are the appellants, claimed that the passway was a public easement acquired by prescription and, as members of the public, insisted upon their right to travel

322 KENTUCKY REPORTS. [Vol. 203.

upon and over it, and to have it maintained so as not to interfere with their right of travel.

Contesting that right this equity action was filed by plaintiffs against defendants seeking to enjoin the latter from using the passway, and to remove the cloud cast upon plaintiffs' titles to their farms because of its alleged prescriptive existence. After the issues necessary to contest the right were made by the pleadings, considerable proof was taken and upon submission the court adjudged that the use of the passway by the public had not been such as to create a prescriptive easement. In other words, the court held that the prior use of it was permissive instead of adverse or under a claim of right, and it granted the prayer of the petition, and to reverse that judgment defendants prosecute this appeal.

The question involved is principally one of fact and like many prior cases of a similar kind, the testimony is very contradictory and very much obscure and confused. The requisite facts to establish a prescriptive passway easement, as we gather from the many cases heretofore before this court involving the question, is the same where a personal appurtenant right is claimed and where a public easement is sought to be established, i. e., where the user of the passway in the condition sought to be established, was from its incipiency under a claim of right and continued uninterruptedly and unexplained for a period of as much as or more than fifteen years, the title to the easement will ripen either in the individual or the public who claimed it. Furthermore, if the user had been for as much as or more than fifteen years a presumption will arise that the easement was founded in a grant and, as a necessary consequence, that the past use was adverse, but such presumption is only a *prima facie* one and may be rebutted by the owner of the servient estate; and if he proves by facts and circumstances that the use was permissive only, the right to the easement will be defeated regardless of the length of time it has been used. Some of the numerous cases sustaining the principles just stated are: Stephens v. Hamblin, 195 Ky. 428; Childers v. Groves, 194 Ky. 790; Smith v. Oliver, 189 Ky. 214; Flener v. Lawrence, 187 Ky. 384; and Brookshire v. Harp, 186 Ky. 217. Numerous others, some of more recent and others of longer standing, will be found in the opinions in those cases; and in some of them, of which Wray v. Brown, 155 Ky. 757, is an illustration, it is broadly stated that whether the right to a passway has

cr not been established in accordance with the above principles must necessarily be determined from the facts of each particular case. It is likewise held in the latter case, as is also done in numerous others which will not be cited, that the court will more readily infer an adverse user when the passway traversed enclosed land than when it ran across unenclosed woodland; but the fact of the traversed land being enclosed or unenclosed is only a circumstance bearing upon the ultimate question for determination and is by no means conclusive. It will also be discovered from a reading of the cited cases that the fact of the maintenance of gates at the termini of the passway by the owner of the servient estate is an evidential one of considerable importance to show that the use was permissive and not adverse. It will furthermore be found from the cases that other facts and circumstances, of greater or less weight, may be looked to in determining whether the use was or not permissive. Among them is that the owner of the servient estate exercised without objection or hindrance his right to change the location or route of the passway whenever he saw proper, although it may have been continuously located in the same vicinity with practically the same termini. Excerpts from the opinions in substantiation of what we have said are unnecessary, since a mere casual reading of them will be sufficient for that purpose. It, therefore, become necessary, in the light of the proven facts in this case, to determine whether the judgment was or not erroneous.

As we stated at the beginning, the evidence is obscure and somewhat confused; but it appears that as long as fifty or sixty years ago a man by the name of Cain owned the farm now owned by plaintiff, Carroll, and for a consideration he agreed that the operator of a saw mill near Caney creek might construct a tram-road to the railroad track, and it appears that after the necessity for the tram-road was at an end, the people continued to use· and travel across the farm near to or over the place occupied by the tramway; and that at about that time or following it gates were erected and maintained by the owner of the farm at the creek and at the point where the passway entered Spring Lick and Goff's Crossing road. It is also proven that either the railroad or the owner of the land maintained gates where the passway crossed the railroad track.

Something like thirty-five or thirty-six years before the trial, Cain sold the farm to a Mr. Geary, and he turned the passway at the southern line of his farm down Caney creek to the line between him and his western neighbor, and from that point north on the line to the Spring Lick and Goff's Crossing road, and it remained at that location for five or six years covering the time the farm was owned by Geary. He sold it to a man by the name of Embrey, and the latter changed the passway back to its original location, and erected and continuously thereafter maintained the gates. Embrey did not personally occupy the land, but some of his sons and a son-in-law did do so, and the proof shows that on a number of occasions they as well as he objected to the public using the passway in rainy seasons and especially objected to its being used for hauling heavy loads, and they likewise positively forbade some of the members of the public from using the passway for any purpose; and at times they nailed up or fastened the gates and they would remain in that condition for a month or more each time. It is likewise shown by the testimony of both sides that some of those who used the passway would first obtain permission of the landowner before using it. There is also testimony to the effect that on one occasion, the precise date not being shown, the pasway ran a northeasternly direction from Caney creek and did not traverse any part of the farms owned by plaintiffs.

The facts we have recited are testified to by witnesses who were introduced both for plaintiffs and defendants, and so far as this record shows they may be considered as uncontradicted. It is true that by a series of leading questions defendants and some of the witnesses they introduced testified that they and others, so far as they knew, continuously used the passway as a matter of right and not by permission of the landowner; while plaintiffs and some of their witnesses testified that the use was permissive. But, the majority of the witnesses for both sides testified frankly and no doubt truthfully that they did not know how the passway was used, since whenever they got ready to use it they did so unless someone objected, and with many of them no objections were interposed. Under this condition of the proof, the truthfulness of the statement found in the Wray case, *supra,* to the effect that each case must be governed largely by its own facts, is pointedly emphasized.

In the determination of the rights of the parties in this character of case, one fact, which seems not to have been adverted to heretofore, should be taken into consideration. In the earlier days of the development of the state there were but few public roads. They were located at great distances apart, and the pioneer settlers had great difficulty in reaching them, and when they were reached they were maintained in such a manner as that they were little better for travelling purposes, if any, that the ordinary neighborhood roads. Under such circumstances, courts were somewhat lenient in allowing the individual or communities the privilege of establishing by long uninterrupted use a passway easement to the end that they might have reasonable access to schools, churches, post offices, places of elections, etc., to enable them to discharge the duties of citizenship and to promote social intercourse necessary for community development. Moreover, in those times, land was not so valuable and the greater percentage of it was in virgin forest, and of course unenclosed. Conditions have radically changed since then. The country is now checkerboarded with reasonably well maintained public roads, so that in most parts of the state each rural residence is within easy reach of one. Land has become valuable and reclaimed for agricultural purposes, and the mail by a system of rural routes is brought to the door of the citizen. The more thickly settled communities have school houses and voting precincts established along the public highways and within easy reach, and it is our opinion that such changes in conditions should not be overlooked in the determination of cases of this kind. By so saying we would not be understood as announcing any changes or alterations in the settled and prevailing fundamental rules for the adjustment of the rights of parties, or as receding therefrom, but only as suggesting reasons for a more liberal rule for measuring the quantum of evidence necessary on the part of the landowner to discharge the burden cast on him to show that the use of the passway was permissive after proof by the claimant of its long continuance.

It also should not be forgotten that, as said in the case of Smith v. Oliver, *supra,* ''The law pertaining to the acquisition of passways by a presumed grant, resulting as it does in the encumbrance of another's property, should not be extended so as to work that result through

mere neighborly courtesies between adjacent landowners;'' and which fact was also adverted to in the Stephens case, *supra,* wherein the opinion said: ''It will, therefore, be seen that it has been the disposition of this court in more recent years to restrict the right of one to acquire title to an easement of this character whereby another, through a mere neighborly act, *may* be deprived of his property and it become vested in the one whom he favored. It, therefore, becomes necessary that each case should be determined upon its own facts, and it should clearly appear therefrom that the right to the easement has been acquired by the necessary adverse user.'' Other opinions from this court properly emphasize the same point.

In the light of the foregoing we have concluded that the trial court properly held that the use of the passway in question was permissive and that plaintiffs had the right to revoke the license by closing it. As we have seen, the inception of the use was for a particular purpose and for a consideration paid. Periodically thereafter the owner of the servient estate, by his express objections, clearly indicated that he regarded the use as permissive only; and, as we have seen, he forever maintained the gates at his own expense. When it was thought proper to change the route of the passway, it was done without let, hindrance or objection, and so far as the record shows under an undisputed right in the owner of the servient estate to do so. We do not think that the use exercised under such circumstances for howsoever long should be permitted to operate to divest the owner of his absolute title merely because some of the witnesses say that in using the passway they did so under what they considered was their absolute right, but which no one claims was ever imparted to the landowner. On the contrary, so far as he was concerned, the passway was maintained largely for his individual benefit and the use made of it by the public was but an accommodating neighborly act extended through his generous permission.

Having reached this conclusion, it follows that the judgment was correct, and it is affirmed.