## Gabbard v. Campbell et al.

Dec. 17, 1943.

S. H. Rice for appellant.

E. B. Rose for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The subject matter of this litigation is an easement over a tract of land containing thirty-six acres, located in Owsley County. On March 19, 1901, C. H. Minter and wife conveyed the southern part of their homeplace to one I. A. Moyars. The thirty-six acres of the northern area conveyed to Moyars is now owned by the appellant, Gabbard, through mesne conveyances and the title to the remainder of the Minter tract not conveyed to Moyars has, through mesne conveyances, become vested in the appellees. Prior to the deed from Minter to Moyars a family graveyard was established on the southern part of Minter's entire tract and at the time of his conveyance to Moyars it contained some graves of the Minter family and, perhaps their relatives, and some deceased neighbors. Therefore, in the deed from Minter to Moyar. there was incorporated an exception and a reservation, the exception being the family graveyard, and the reservation reserved was:

"a haulway or road is excepted leading from the county road at Doctor Glass' to C. H. Minter's land on the hill. This is only a right of way reserved to C. H. Minter, the title to same is to remain in said I. A. Moyars." Thus, the thirty-six acre tract now owned by appellant became the servient estate and that owned by appellees, the dominant estate. Upon the servient estate there was an old clearing upon the top of a ridge traversing it, and after the conveyance by Minter to Moyar the dominant estate owners—in the absence of a definitely described passway or haulway across the servient estate in the reservation—began to cross the clearing on the latter in a diagonal and winding sort of way in traveling to and from the graveyard and the tract upon which it was located, from which firewood was sometimes obtained for the benefit of those occupying the Minter residence (dominant estate). However, there was never any definite or agreed upon location of the reserved passway. Near the southeastern corner of the cleared field was the southern terminus of the passway as it crossed over the field, whilst the entry of the passway as it traversed the cleared field was some fifty, seventy-five or one hundred yards north of the northeastern corner of the field, so that in traveling the passway across the field it was divided into triangular two parts by the diagonal route selected by the travelers.

After appellant became the owner of the servient estate, he reclaimed the somewhat abandoned field and commenced to cultivate it, which he did for some years before the filing of this action, and just before it was filed he staked off a passway along the east side of the field and at the brink of the bluff running down to a public highway, thereby locating the passway across the field on its eastern edge instead of its theretofore diagonal course across the field. In doing so he removed the northern terminus of the passway, as it crossed the field, between fifty and seventy-five yards farther east from where it was previously located, thus making the passway across the field shorter than what it had theretofore been. Neither the old diagonally traversed passway, nor the relocated one, was fenced and the relocated one was practically straight, whilst the old route traversing the field was twisting and winding in the general direction traveled by the dominant estate owners.

The latter filed this action in the Owsley Circuit Court against appellant to enjoin him from altering

the course of the original passway as it had been traveled, or from in any manner obstructing its free use as theretofore made. The answer recited the facts as hereinbefore so briefly stated, and claimed that the route of the passway, which defendant had provided was equally as efficient as the old route; that it was shorter and that the change in its northern terminus of only a distance of between fifty and one hundred yards was not such a material one as to entitle plaintiffs to the injunctive relief they sought. Evidence was taken and the cause submitted to the court which sustained the prayer of the petition and enjoined defendant as therein requested, from which he prosecutes this appeal.

It is insisted by appellees that the only way any change could be made in the route of the passway was by a county court proceedings as prescribed in section 3779a-13 of Carroll's 1936 Edition of the Kentucky Statutes. However, there seems to be no corresponding section contained in KRS, and it might be that the section in Carroll's statutes was repealed by the adoption of KRS by the Legislature as the statutory law of this Commonwealth. But, whether so or not, it is our conclusion that the section, as contained in Carroll's statutes, is applicable only to passways that are established by court proceedings in accordance with Chapter 94a of the same edition of Carroll's statutes, of which the section referred to is a part. It was so intimated by us in the case of Terry v. Boston, 246 Ky. 222, 54 S. W. (2d) 909, when Judge Willis, the writer of that opinion, said: "It may be that the statute applies only to passways established pursuant to its provisions," citing the case of Gibson v. Porter, 15 S. W. 871, 12 Ky. Law Rep. 817. We are now of the opinion that the intimated conclusion of Judge Willis was and is correct and that the section of the statute referred to applies only to enforced passways which are established by a court proceeding upon due application made therefor. The word "established" is used throughout the statute as descriptive of the passway to which it refers and it is not correctly descriptive of other methods by which passways may be created, since the word "acquired" would be more appropriate to them. Furthermore, it was no doubt in the mind of the Legislature in enacting the passway chapter, supra, to provide a means by which the same court that established the passway might also possess authority to later, and upon changed conditions,

alter the route of such established passway when it could be done equitably and with justice to all interested parties.

So that the case is reduced to whether or not the alteration attempted to be made by appellant (servient owner) in the routing of the passway here involved, is one that the court will prevent at the behest of the dominant estate owner. We are aware that this and other courts have held that where the right to a passway is obtained by contract or reservation, with no described route contained in the contract, or reservation, the parties thereto may locate the route by appropriation and use and when done the right to its continuance as so located becomes vested in the owners of both estates and it may be enforced and protected by appropriate litigation.

But the cases so holding involved more or less radical and material alterations, as well as resulting in the diminution of the rights of the dominant owner. When no agreed upon route has been fixed by the parties and where the travel, pursuant to the easement right, is not confined to particular areas or dimensions, but pursues a more or less winding course—as the proof shows in this case—we think the law applicable to easements acquired by prescription should apply. In the cases of Snyder v. Carroll, 203 Ky. 320, 262 S. W. 290, and Wray v. Brown, 155 Ky. 757, 160 S. W. 488, we held that questions involving passway easements "must necessarily be determined from the facts of each particular case." In each of those cases only prescriptive rights of acquirement were involved and the proof showed that the travel by the one claiming such acquired right was through woodland with no particular defined route but that the traversing of the servient estate, though in one general direction, was not all the while at the same place; and in them we held that the passway, though acquired by such character of use, could be located by the servient estate owner in such a way as least inconvenient to him; provided the location did not diminish the rights of the dominant estate owner.

The same principle was upheld in the Terry case, supra, where the right to the easement was not denied "but merely the right of the owners of the land over which it passed to change its location." In sustaining such right we said, "no drastic change was made, but a

more convenient variation was adopted * * * slight deviations from the established easement are to be expected, and do not affect the rights of either party" (citing cases). Attention was also called in that opinion to the fact that both routes "were plain dirt roads on the same character of soil." The alteration made in that case was upheld by this court.

But it is claimed that the new marked out route for the involved passway, as it traverses the cleared field, is not as serviceable as is the old route although it is shorter according to the proof. The altered route according to the preponderance of proof is near the brink of the hill at the eastern edge of appellant's land. He and other witnesses testified that the alleged route traversed terrain equally as feasible and appropriate as that over which the old route runs. It is true that along the new route is a slight swag which plaintiffs claim obstructs travel with vehicles in rainy seasons but which is contradicted in the main by the testimony adduced by defendant.

In arriving at our conclusion we cannot escape the impression that this action was considerably motivated by plaintiffs, either through spite or the desire for revenge, than to prevent any invasion of those rights and which impression is created by the testimony some of them gave at the trial. We insert that given by one of them to this effect:

"Q. And you are not satisfied with the way he is attempting to make the change in the passway? A. No, sir, I am not satisfied.

"Q. And you insist upon the use of the old right of way? A. Yes, sir, absolutely.

"Q. You don't mind a change in the road through his land if its as good as the old one, do you? A. Yes, I do. He just changed it for his own use, for himself not for the interest of the people using it.

"Q. If the road through his property was shorter and on the same kind of ground and was as good as the old one, would you mind the change? A. I sure do. When a person is burying their dead it wouldn't make any difference whether it took a day or not, that wouldn't make any difference."

In view of the rule referred to, supra, that each case involving similar rights as here involved should

be determined by its own facts, we conclude that the court erred in granting the injunction and that the proper order should have been a dismissal of the petition.

Wherefore, the judgment is reversed with directions to dismiss the petition.