COZBY et al. v. ARMSTRONG et ux.
No. 14854.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 12, 1947.

Rehearing Denied Nov. 7, 1947.

404

Culbertson, Morgan, Christopher· & Bailey, of Fort Worth, for appellant.

Sam Billingsley and Aubrey G. Alexander, both of Fort Worth, for appellees.

HALL, Justice.

This suit is over the closing of an old road, instituted by T. M. Armstong, et ux., appellees, principally against appellant Grace Cozby, a widow, in the 17th District Court of Tarrant County, Texas.

In September 1933, E. C. D. Willburn and his wife owned in fee a 250.19 acre tract of land which is bound on the north by the Benbrook public road and is bisected by a railroad track running east and west across it; during said month and year they subdivided this land between their children and executed deeds to the following persons, the amount of acres set opposite their names:

| | |
|---|---|
| Reuben B. Willburn | 50 acres |
| Church O. Willburn | 25 acres |
| Mrs. M. Annie Ritz | 25 acres |

and to the following an undivided interest in 150.19 acres: Mrs. Mary Armstrong, one of the appellees herein, Mrs. Polk White, Frank E. Willburn, Mrs. Jessie Murray, Ira B. Willburn, and Mrs. Ruth F. Kennedy.

Appellees acquired all of the title to the. said 150.19 acres and used the same as a homestead from 1940 through this trial. Appellee Armstrong purchased the Ritz 25 acre tract, lying west of his 150.19 acres and sold same to Church O. Willburn on January 28, 1939, and reserved the following right-of-way easement:

"* * * however, since the tract of 150.19 acres out of the same surveys lying to the East of the above property has no access to the North across the T. & P. right-of-way, an easement is hereby reserved, in favor of the present and future owners of · said 150.19 acres of access, over and across the hereinabove described 25 acres westward to a crossing over said right-of-way located on the 50 acre tract owned by Reuben B. Willburn out of said surveys."

On January 28, 1939, Church O. and Reuben B. Willburn, and their wives, as owners of all the remainder of the Willburn tract lying west of the Armstrong tract, executed an instrument in writing, granting appellees and assigns a right-of-way easement over their land, which is as follows:

"* * * do hereby give, grant and convey unto said T. M. Armstrong and wife Martha May Armstrong (herein sometimes called Grantees), a perpetual easement of full, free and convenient access to and from the above described 150.19 acres, over and across the aforesaid Ritz 25 acres, Church O. Willburn 25 acres and Reuben B. Willburn 50 acres to the present crossing over the T. & P. Railway Company now located on said Reuben B. Willburn 50 acres, and continuing northward therefrom to said Fort Worth and Benbrook Highway;"

In March, 1943, Reuben B. Willburn, the then owner of the most westerly 62½ acres of the original 250 acre Willburn tract, sold same to Lacy W. Goostree, who was acting as agent for appellant Cozby and her late husband. Said land was sold subject to the easement of January 28, 1939, supra, and on the same day the said Goostree executed a deed to the Cozbys and also entered into a written agreement by and between him, Reuben B. Willburn, et ux, and Church O. Willburn, et ux, which said written agreement set out, among other things, the following:

"And Whereas, Church O. Willburn and wife, Cana Willburn, are the owners of 37½ acres of land in said surveys lying immediately East of and adjoining the land to be so conveyed to said Goostree—and being the land they have this day sold and obligated themselves to convey unto the said Reuben B. Willburn; and Whereas, T. M. Armstrong and wife, Martha May Armstrong are the owners of approximately 150 acres in said surveys lying immediately East of and adjoining the said Church O. Willburn 37½ acre tract, and the said Armstrong and wife, and said Church O. Willburn and wife, have heretofore acquired a certain easement for a private roadway over and across the said Church O. Willburn 38½ acre tract and the said Reuben B. Willburn 62½ acre tract to the T. & P. Railway crossing situated in

the last mentioned tract and continuing thence northerly to the Fort Worth and Benbrook Highway; and

"Whereas, the mentioned roadway is well defined on the ground, over and across said tracts, the same having been in use for sometime; and Whereas, the said Goostree, for and on behalf of himself, and his heirs and assigns, is desirous that the location and use of said mentioned roadway shall, at some future convenient date, be changed to and located in accordance herewith, and thereafter limited as hereinafter provided;

"Now Therefore, as an inducement unto said Goostree to so purchase said 62½ acre tract, it is covenanted and agreed between the parties hereto, that at such time as the said Armstrong and wife, their heirs or assigns, shall abandon the use of said roadway, or at such time as they shall agree to the change herein provided, it is covenanted and agreed between all parties hereto that the said Church O. Willburn and wife, their heirs and assigns, as the owners of said 37½ acre tract will, at his or their own proper cost and expense, construct and gravel a roadway from said 150 acre tract over and across said 37½ acre tract to a point near the intersection of the South line of the T. & P. Railway Company right-of-way with the E. line of said 62½ acre tract; and that the said Goostree, or other owner of the said 62½ acre tract, shall, at his or their own proper cost and expense, construct and gravel a road thence Southwesterly with the South line of said Railway right-of-way to the present crossing over said railway tracks, and thereby provide free and easy access from said 150-acre tract and said 37½ acre tract, and that thereafter the presently existing easement for roadway over said 37½ acre tract and said 62½ acre tract, appurtenant to the said 150-acre tracts, shall be limited to the roadway to be so constructed."

Appellee Armstrong was not consulted about this proposed change. The deed which Goostree executed to John R. Cozby, the deceased husband of appellant, was also made subject to the easement of January 28, 1939, supra.

This case has been before this court before on a temporary injunction and a detailed statement of the contention of the parties is outlined in the opinion in 191 S.W. 2d 786. However, the plaintiffs' pleadings have been changed some in accordance with the holding in said opinion but the principal contentions of the parties have not, and said opinion is referred to for a more detailed analysis.

It is undisputed that the only railroad crossing is located on the Cozby tract which is on the West side of the original Willburn 250 acre and that the major portion of the land owned by appellee Armstrong and wife is located on the East side of said original Willburn tract so that the only access appellees Armstrong have to the highway is obtained by the use of said railroad crossing on the Cozby land. It is admitted by Mrs. Cozby that the only road which the Armstrongs could use and were using, at the time she and her husband purchased the land, ran by her front door and then turned north toward the railroad crossing and the Benbrook highway.

In accordance with the last part of the agreement between Goostree, Reuben Willburn and Church Willburn, Reuben B. Willburn established and built a road along his west line to the railroad right-of-way and graveled the same. Appellant Cozby established and graveled a road connecting with the graveled road, built by Mr. Willburn, along the railroad right-of-way across her land to the railroad crossing, thereby diverting the road from in front of her house down the fence row between her and Reuben Willburn and along the railroad right-of-way. This was done in 1944. In 1945 she plowed up the old road going in front of her house, put a yard fence over a portion of it and blocked the entrance at both ends, thereby establishing the new road in the place of the old one.

At this point was when this law suit was filed, and at the end of the trial upon its merits, the court entered a judgment for appellees, reestablishing the old road and enjoining defendant Cozby and other land owners from interfering with the rebuilding of the old road and allowing only three gates to be across said road.

Three of the issues submitted by the trial court and the jury's answers are as follows:

"Special Issue No. 1:

"Question: Do you find from the preponderance of the evidence that by the use of the old road from the Armstrong property to and across the Texas and Pacific railroad right-of-way, and taking into consideration what the parties said and did during such period of use, that the plaintiffs Armstrong and the defendants, Reuben Willburn and Church O. Willburn, intended thereby to fix the said old road as the final and permanent location for the way across the said land to the crossing on the Texas and Pacific right-of-way? Answer 'yes' or 'no.'

"Answer: Yes.

"Special Issue No. 2:

"Question: Do you find from the preponderance of the evidence that the use of the old road by the plaintiffs across the premises of Grace Cozby deprived her of the reasonable and practical use of her residence and land lying south of the railroad? Answer 'yes' or 'no.'

"Answer: Yes.

"Special Issue No. 3:

"Question: Do you find from the preponderance of the evidence that the new road is as suitable, convenient, and economical for the plaintiffs as the old road? Answer 'yes' or 'no.'

"Answer: Yes."

The executed easements of 1939 did not pass title to nor designate a particular right-of-way by metes and bounds.

There was no house on appellee's land until he built his residence in 1940. Up until then the testimony shows that he did not know positively where he himself wanted the road. Appellees did not have actual knowledge of ownership of any of the land until many years after the partition deeds of 1933 were executed. E. C. D. Willburn, who partitioned the land among his children, used this old road as a pasture road, leading from his home, which is the present home of appellant Cozby, over into the east side of his pasture, now the land owned by appellant. Gravel haulers had also used it when he, Willburn, sold gravel from pits on what is now known as appellees' land.

The testimony shows that it was a plain and visible pasture road and well known to the parties. It ran in a curve in front of appellant Cozby's house, and then northward across the railroad track and on to the Benbrook Highway. This old road was used under a right of easement for the first time in 1939, and under these stated facts, appellees contend that since the jury found that the grantors of the easement intended to fix the road as the permanent location of the easement, title to such road as above described became vested in the Armstrongs and could not thereafter be changed except by said Armstrongs' agreement.

Be that it may, parties in the Goostree agreement of 1944, supra, recognized this old road as the permanent easement. The language in the first part of said instrument sets out the fact that the easements of 1939 were acquired; that the mentioned roadway is well defined on the ground over and across said tracts; that the same has been used for some time; and that it was agreed by the parties that at such time said Armstrong and wife, their heirs or assigns, shall abandon the use of said roadway, or at such time as they shall agree to the change herein provided, then such change may be made. In the same instrument the servient owners designated the new way.

If the case had been tried upon this theory, and by such language in the agreement, appellant could not make such contemplated change in said right-of-way until appellee Armstrong should abandon said road, or should agree to the change, then in that event the question arises whether or not the trial court erred in not submitting appellant's theory of the case to the jury, which was raised by the conflicting testimony, to the effect that by use of the new road by Armstrong, did said Armstrong accept the new road as the location across the Cozby and Willburn tracts, and/or did such use by the Armstrongs establish abandonment of the old road, and/or did T. M. Armstrong tell Mrs. Cozby that he was not going to use the old road any more. These requested issues and other similar ones were refused by the court.

The facts further show that the new change in the road increased the length of

travel from between 195 feet to 320 feet. The new road was graveled by Mrs. Cozby and Willburn. There were three gates to open over the old route, and only one over the new one.

The extent of the old road cut off begins on or near the east line of the Cozby tract and runs 165 feet west through her front yard near her front door and then north a short distance to the railroad tract, which cuts off a small tract of land lying east and north of her house.

By the closing of this portion of said old road, she testified that it assisted her in the use of her property in the form of orchards, gardens, and removing the dust and lights from her home caused by automobiles going around said curve immediately in front of her residence.

The jury found that the use of the old road by appellee deprived appellant, Mrs. Cozby, of the reasonable and practical use of her residence and land lying south of the railroad; and that the new road is just as suitable, convenient and economical road for appellees to travel and use as the old one.

■ Most of the text books are in harmony with the general rule that the location of an easement may not be changed by the easement owner or the servient tenement without the consent of both parties, even though the way so located becomes detrimental to the use and convenience of the servient estate. 28 C.J.S., Easements, § 84.

■ However, Texas Jurisprudence points out, in volume 15, page 804, that "the owner of an easement does not acquire the right unnecessarily to continue it as originally used, if such use would in effect destroy the right of the owner of the fee to the enjoyment of his property."

■ 28 Corpus Juris Secundum, Easements, § 80, recites that: "Where a conveyance of a right of way does not definitely fix its location, the grantee is entitled to a convenient, reasonable, and accessible way within the limits of the grant. What constitutes a way of this character depends upon the condition of the place and the purposes for which it was intended, and the acts of those having the right of user. However, the location must be reasonable as respects the rights of the grantor as well as the grantee."

And in 28 C.J.S., Easements, § 80, the text reads as follows: "Unless a contrary intention appears from the terms of the grant, when a right of way is granted over certain land without fixing its location, but there is a way already located at the time of the grant, this will be held to be the location of the way granted, and the grantee cannot be compelled to accept a substitute therefor. Under the circumstances it will be presumed that the parties had in mind the way already located."

■ In 9 R.C.L., page 791, § 48, the rule is laid down as: "If an easement in land is granted in general terms, without giving definite location and description to it, the grantee does not thereby acquire a right to use the servient estate without limitation as to the place or mode in which the easement is to be enjoyed. The right to locate belongs to the owner of the servient tenement, but he must exercise it in a reasonable manner, having due regard to the rights and interests of the owner of the dominant estate." See also 110 A.L.R., page 176.

And in 9 R.C.L. § 49, of the same text, we find the following language: "When an easement granted in indefinite terms has been once selected and located, its location cannot be changed by either the owner of the land or the owner of the easement without the consent of the other party, for it would be an incitement to litigation to treat such an easement as a shifting one, and would greatly depreciate the land on which it is charged and discourage its improvement."

■ In 15 Texas Jurisprudence, page 765, we find the definition of an easement to be as follows: "An easement is a liberty, privilege, or advantage in land without profit, existing distinct from the ownership of the soil."

In 130 A.L.R., page 768, it is pointed out, among other things, that the use of an easement is limited to those which are reasonably necessary and convenient and as little

burdensome to the servient estate as possible for the use contemplated.

In the instant case, the servient owners, including appellant; through the Goostree agreement, and while recognizing the old road as the right-of-way, stipulated and designated in said instrument the proposed change as therein outlined, the fulfillment of which being the basis for the controversy in this case.

The right-of-way easement having been established by the servient owners, the next pertinent question is did the servient owners have a right to relocate this small portion of the recognized right-of-way, without the consent of the dominant owner under the facts in this case wherein it was found by the jury:

(1) That the new way is as suitable and economical for grantee to travel as the old way.

(2) Especially (if it is found by the jury), that by the continued use of such portion of the old road so abolished by the servient owners, deprived appellant of the reasonable and practical use of her residence and of her land.

Most of the law pertaining to change of location has to do with the making of a complete new right-of-way, including the change of the termini, and/or the closing of a road without establishing a new way, which cannot be done by one owner without the consent of the other one. In this case, we find that the termini remain the same, and even though the new way made a drastic change in a small portion of the road and that such change was made for the benefit and convenience of one of the servient owners; wherein it deviated the road from in front of her house by running the same down a fence line and connecting with the old road at the railroad crossing, thus enabling the appellant Cozby to eliminate the dust and the lights of automobiles from entering her house and in a small way allowing her a greater privilege in the use of her land cut off by the old road. Yet the jury found such change did not discommode the appellees in any way.

■ All states recognize the general rule that it is the duty of the dominant owner to build and maintain the easement right-of-way. Appellee testified that he had not spent one penny on his easement way. Appellant Cozby testified that she and Reuben Willburn hauled many yards of gravel and gravelled the new portion of said road. At least this gesture on the part of appellant Cozby does not show bad faith.

Under the court's judgment and under the testimony there would be three gates to open if the old road is reopened, while traveling the new way there would be only one gate, the same being the one leading out of appellees' land. In their brief however, the appellees submitted the following argument: "If the Armstrongs are required to use the new road, there is nothing to keep Mrs. Cozby or Puryear, who now owns the 37½ acre tract, from erecting a gate across the new way between the Cozby and Puryear lands. The parties in interest in the Spring of 1940 recognized that the owners of the servient estates were entitled to a gate between their property lines. · Is there anything to prevent them from erecting a gate on their property line across the new way?" While we do not find it necessary to answer this question, yet we find the rule laid down, in the case of Chaney v. Martin, 205 Ark. 962, 171 S.W.2d 961, is plausible.

■ We therefore find that the jury decided the two ultimate issues in favor of appellant, and further find that such change in the road was not so drastic as to impair the rights and title of the appurtenant easement of appellee. Kelsay v. Lone Star Gas Co., Tex.Civ.App., 296 S.W. 954, writ dismissed; Terry et al. v. Boston et al., 246 Ky. 222, 54 S.W.2d 909; Gabbard v. Campbell et al., 296 Ky. 216, 176 S.W.2d 411.

The judgment of the trial court is reversed and rendered for appellant.