Drew **HESTER** et al., Appellants,

v.

William **JOHNSON** et al., Appellees.

Court of Appeals of Kentucky.

May 13, 1960.

Burchett & Burchett, Ashland, for appellants.

Creech & Cox, Ashland, for appellees.

PALMORE, Judge.

This case involves the rights of several owners of land for the benefit of which a passway easement has been exercised continuously since 1900, as against the rights of the owner of the land across which the passway runs. In its essential particulars the decree of the trial court adjudged that the plaintiffs, owners of the dominant tenements, were entitled to an easement 30 feet in width for a distance of some 400 feet through the servient lands of the defendant, Hester, and enjoined Hester from interfering with their use of it. Hester appeals, claiming that appellees are not entitled to a 30-foot right-of-way and, further, if they are so entitled, the course of the passway should be altered so as to be partially located on the adjoining land of Paul Burke, one of the appellees. It is our conclusion, however, that the judgment of the trial court was correct.

All of the lands involved were part of a large tract owned by John D. Fannin at the time of his death in 1899. In 1900 the estate was divided pursuant to an ex parte partition proceeding brought in the Boyd County Court. Hester, the appellant, is now the owner of lot 1 of the division, and the appellees own various portions of the remainder of the division, including lots 3, 4, 5 and 7, all of which are benefited by the use of the roadway in question.

A geographical description is necessary to an understanding of the case. All of the land in question lies north of a public road called the Bolts Fork Road, which runs in an east-west direction. Bolts Fork Creek runs along the south side of this road. Coming from the north-northwest and running under the road and into Bolts Fork Creek is a small tributary which we shall hereinafter call simply the branch. The disputed roadway comes down the hollow along the east side of the branch and enters Bolts Fork Road at right angles. The plat filed by the county court commissioners in 1900 shows the boundary between lot 1 on the east and lot 2 on the west as roughly coinciding with the course of the creek. Proceeding clockwise, lot 4 lies north of lot 2, bordering lot 1 for a short distance, and lot 3 lies immediately east of lot 4 and north of lot 1. Lot 1 therefore is contiguous to lots 2, 4 and 3, in that order. Lots 5 and 7 lie to the north and west of lots 4 and 3 and do not join lot 1, their access being through a continuation of the lane across lot 3. Lots 3 and 4, to the north and northwest of Hester's lot 1, are owned by the appellee Burke.

That portion of the passway which is involved in this case emerges southward out of lot 3 into the northwest corner of lot 1 (Hester's land) and runs a distance of some 400 feet along the westerly boundary of lot 1 to the public road. It is indicated on the 1900 plat by broken lines, which were not surveyed but apparently drawn freehand to show the approximate course of the farm lane as it then existed. There is a single broken line for the short distance from lot 3 to the point opposite the corner of lots 4 and 2 in the west line of lot 1, but from that point southward to the Bolts Fork Road the course of the passway

is shown by double lines that are more or less astride the branch and, therefore, astride the boundary line between lots 1 and 2. Actually, however, no part of the passway has ever been located on lot 2 or lot 4, and the owner of lot 2 is not a party to this proceeding.

In the various deeds made pursuant to the partition in 1900 (including the conveyance of lot 1 to Hester's predecessor) the roadway was established by the following language:

"The foregoing land is conveyed subject to and with benefit of the following road and haulway, as an easement upon and to be appurtenant to, and used with, and in behalf of Lots Nos. 1, 2, 3, 4 and 7, and also as an easement to be appurtenant to and used with and for the benefit of Lots Nos. 5 and 7, of the division of land in the action aforesaid, to-wit: Beginning on Bolt's Fork at or near beginning corner of said Lot No. 5; thence down along said creek till it strikes land of Jos. H. Ross as an easement in behalf of all the lots of division of lands of said John D. Fannin, deceased, as per this, the division above mentioned. Said right of way to be at least 30 feet wide and along the roadway now used up and down said creek, and sufficient for ordinary travel thereon with wagon and team, with right of owner of any of said lots to locate and keep gates across said roadway on the line of same on terms that those using same shall be responsible for damage, injury to, or negligent use of said gates, or failing to close same as used by them." (The words "Bolt's Fork" and "creek" in the deeds refer to the branch, not the main creek).

Ever since the time of the division in 1900 there has been a fence along the east side of the branch, which fence now forms the west border of the lane or roadway in controversy. There is a small strip of ground between the branch and the fence forming the west border of the lane where it passes lot 4, but since the fence has been regarded all along as the boundary this strip of ground between the branch and the fence must be regarded as a part of lot 4 belonging to the appellee Burke.

No part of that portion of the passway which is here in dispute has ever been located anywhere but on the appellant's property, lot 1 of the division. Originally, instead of following closely the boundary line along the west side of his tract, it angled somewhat eastward and reached the Bolts Fork Road east of its present mouth. However, some 40 years ago Hester's predecessor in title moved the lane over to the fence line next to the branch, and either he or Hester later erected another fence along the east border of the lane, so that it was then fenced on both sides. Over the years the appellees kept their fence up, but when the fence along the east side of the lane deteriorated the appellant, Hester, took it down, resulting in one of the factors which precipitated this lawsuit, wherein the appellees complain that Hester in tilling his ground to its uttermost limits has thrown dirt into the lane. Coincident to the removal of this fence Hester placed a gate across the lane where it enters Bolts Fork Road, and there is much crimination and recrimination about the gate. Appellees say it is too narrow and flimsy and so crudely hung that at times when the ground is muddy it is nearly impossible to open and close. Hester, on the other hand, contends that the reason for its unsatisfactory state is that the appellees have made a habit of running into it with their automobiles and other vehicles.

The irritations just mentioned, however, were not the main source of the trouble. In order to provide proper drainage there has always been a little ditch, perhaps 1½ feet deep, running down along the east border of the lane to a culvert in the bottom, which culvert crosses under the lane and provides drainage to the branch. There is some question as to exactly who put the culvert in, but it may be assumed that it was constructed by some of the ap-

pellees or their predecessors, who have maintained and used the road and from time to time have received help from the county. At any rate, although the culvert is of sufficient size to handle the drainage from this ditch it is not sufficient to handle also the drainage from Hester's adjoining 6-acre field of bottom land. It appears that in the old days this bottom was used as a hog wallow but at some time after the construction of the culvert Hester cut a ditch 4½ feet deep in order to drain the field through the culvert. The result is that when there is a heavy rainfall or wet season a good deal of water stands in Hester's field, much to his annoyance. Shortly before they brought this litigation the appellees had placed some rocks or stones on the surface of the lane in order to keep it passable. Hester, by his own admission, threw these stones into the small ditch and also laid a post or posts lengthwise in the ditch, all for the purpose of preventing the flow of water to the culvert in competition with the water from his bottom field. His attitude was and is that the culvert was too small for both and that his lands had the priority. The result of these actions was that the water from up the hollow, instead of going down the little ditch by the side of the road, cut a new ditch down the road itself. This lawsuit followed.

In their complaint the appellees asked for a judgment declaring them entitled to a passway 30 feet in width and enjoining Hester from further interfering with their use and enjoyment of it. They claimed monetary damages also, as did Hester by counterclaim. However, neither party adduced satisfactory proof of damages, none were allowed, and that aspect of the case is not seriously contested on this appeal.

After receiving findings of fact, conclusions of law and recommendations submitted by the special commissioner to whom the case had been referred for trial, the chancellor entered a judgment declaring that appellees were entitled by the deeds to a passway easement 30 feet in width to be located entirely on the lands of the appel-lant, Hester; enjoining Hester from interfering in any way with the use of the passway; requiring him to remove the obstructions in the ditch and to substitute a wider and more efficient gate at the mouth of the lane; and recognizing in Hester the right to install a larger culvert and to alter the course of the passway on the condition that in so doing he keeps within his own boundary and provides another route equally convenient and in as good a condition as the present passway.

As we understand the arguments made by the appellant, they are: (1) that in making the division of the John D. Fannin lands in 1900 the county court commissioners did not have the right to provide for a passway and, therefore, whatever rights the appellees have were acquired by prescription; (2) assuming, however, that the easement was established by deed rather than prescription, since it was not described by metes and bounds the rights of the appellees are the same as if the easement had been established by prescription; and (3) if the appellees are entitled to a right-of-way 30 feet in width it should be located half on their property and half on appellant's property.

■ Cited in support of the first contention is Howard v. Long, 1931, 238 Ky. 822, 38 S.W.2d 951, wherein this court, on an appeal taken from a judgment confirming a report of commissioners making a division and laying out a certain passway across one of the purparts for the benefit of another, held that the commissioners were not authorized to establish a passway in the absence of directions to that effect in the order appointing them. One of the distinguishing features of that case was that the owner of the dominant tract involved in the division had adjacent thereto another and separate tract of land which was not involved in the division but which also stood to benefit by the passway which the commissioners sought to establish. However, the obvious reason the case is not applicable here is that it involved a direct

attack by appeal, whereas in the instant case the action of the commissioners was accepted by the parties to the division in 1900 and has been recognized for more than half a century since. Hester's predecessors in title, if they had any objections, might have raised them by appeal, but they did not do so and the matter was thereupon concluded.

 Gabbard v. Campbell, 1943, 296 Ky. 216, 176 S.W.2d 411, and Pickel v. Cornett, 1941, 285 Ky. 189, 147 S.W.2d 381, are cited in support of the proposition that where a deed creating an easement does not set forth its course and dimensions they are governed by the rules applicable to an easement by prescription. In such a case the extent of the easement is established according to the extent of user.

In the case now before us the appellees have never used more than 15 feet of the 30-foot width prescribed in the deeds of division, from which it is argued that the easement must therefore be so limited. By its very terms, however, the principle is inapplicable to this case for the reason that the deeds creating the easement in 1900 did specify its course and dimensions. Not only did they provide that the right-of-way should be 30 feet in width, but also that its course should be "along the roadway now used up and down said creek." The wisdom and foresight of the county court commissioners in laying out these definite and tangible ground rules is aptly demonstrated by their dispositive role in the resolution of this controversy.

By the express terms of the deeds appellees are entitled to a passway 30 feet in width along the course of the lane as it existed in 1900, which was east of the branch and entirely on lot 1. Since the boundary fence is somewhat east of the branch and the lane is immediately to the east of the fence, it could not be altered westwardly without being placed partially on the lands of the appellee Burke. There is nothing in the record, in the action and conduct of the parties over the past half century, or in the law to which we have been cited that would support the theory that the passway should be located partially on any portion of the dominant tenements involved in this proceeding. Moreover, one of the findings of fact by the special commissioner, which was accepted by the trial court, is that the lane could not be moved closer to the creek without materially affecting its usefulness to the appellees for ingress and egress. That finding of fact is supported by competent evidence. It is clear, therefore, that the third point mentioned above is not tenable.

The judgment is affirmed.